IN RE JUVENILE APPEAL (85–AB)*
(12391)

PETERS, C. J., HEALEY, PARSKEY, SHEA and DANNEHY, Js.

Argued November 7, 1984—decision released February 26, 1985

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed and the records and briefs will not be distributed to the various libraries of the state. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Supreme Court.

*Kenneth Rosenthal,* assistant public defender, with whom, on the brief, were *Raymond P. Kosinski,* assistant public defender, and *Joette Katz,* public defender, for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Cathleen M. Edwards,* assistant state's attorney, for the appellee (state).

SHEA, J. This case arises out of an incident on January 17, 1982, when a woman was abducted, raped and robbed by several youths in the North Haven area. The defendant was fifteen years old at the time of the offense and, therefore, a "child" whose offenses would ordinarily be treated as "juvenile matters." General Statutes §§ 46b-120, 46b-121. The crimes of sexual assault in the first degree, kidnapping in the first degree, larceny in the second degree and robbery in the second degree resulting from the January 17, 1982 incident were alleged as the basis for the charges of delinquency against the defendant. See General Statutes § 46b-145. An additional ground alleged was the defendant's escape from custody at a juvenile detention facility in which he had been held prior to the incident. The court granted the motion of the state to transfer the case to the regular criminal docket pursuant to General Statutes § 46b-126.[1] The defendant

---

[1] "[General Statutes (Rev. to 1981)] Sec. 46b-126. (Formerly Sec. 51-307) CHILD CHARGED WITH A CLASS A FELONY OR SERIOUS JUVENILE OFFENSE TRANSFERRED TO REGULAR CRIMINAL DOCKET, WHEN. (a) The court shall hold a transfer hearing to determine whether it is appropriate to transfer and may transfer from the docket for juvenile matters to the regular criminal docket of the superior court any child referred for the commission of a class

has appealed the transfer order, claiming error in the failure of the court to conduct a full evidentiary hearing to ascertain whether there was probable cause to believe that he had committed the offenses charged, one of the statutory prerequisites for such a transfer.[2]

A felony, or for any serious juvenile offense if such child has previously been adjudicated a delinquent for a serious juvenile offense, provided such child has attained the age of fourteen at the time the alleged delinquent act was committed. If the child is or has been under the custody of the commissioner of children and youth services, the commissioner shall provide any relevant information concerning the amenability of the child to treatment for use at the transfer hearing. No such transfer shall be valid unless, prior thereto, the court has caused an investigation to be made as provided in section 46b-134 and has made written findings after a hearing, that there is probable cause to believe that (1) the child has committed the action for which he is charged; (2) the child is not amenable to treatment in any institution or state agency or other available facility designed for the care and treatment of children to which said court may effect placement of such child which is suitable for his care or treatment and (3) the sophistication, maturity and previous adjudications of the juvenile are such that the facilities used for regular criminal sessions of the superior court provide a more effective setting for the disposition of the case and the institutions to which said court may sentence a defendant sixteen years of age or over are more suitable for the care and treatment of such child. Upon the effectuation of the transfer, such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age. If the action is dismissed or nolled or if such child is found innocent of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen."

[2] The trial court did hold an evidentiary hearing in determining whether the second and third criteria for a transfer under § 46b-126, amenability to treatment in a juvenile facility and "sophistication" warranting the "more effective setting" of the regular criminal session of the Superior Court, had been satisfied. In refusing such a full hearing in respect to the first criterion, probable cause to believe that the defendant had committed the acts charged, the trial court followed the procedure found to satisfy constitutional requirements for custodial detention. *Gerstein* v. *Pugh,* 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975). The court thus relied wholly on the affidavits attached to the arrest warrants in the absence of a preliminary showing by the defendant challenging any of the material statements in the affidavits. See *Franks* v. *Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). The court concluded that the provision of § 46b-126 requiring that the requisite findings with respect to the three criteria be made "after a hearing" meant, in respect to the determination of probable cause, that only a hearing satisfying constitutional requirements for sustaining an arrest was necessary. It was also held that General Statutes

We do not reach the issue raised because we have concluded that the transfer order appealed from was not a final judgment and that we, accordingly, lack jurisdiction.

In exercising its constitutional authority to define the jurisdiction of the courts, the legislature has generally limited this court to "[a]ppeals from final judgments or actions of the superior court." General Statutes §§ 51-197a, 52-263; see Conn. Const., amend. XX; *Styles* v. *Tyler,* 64 Conn. 432, 451-53, 30 A. 165 (1894); but see General Statutes § 52-265a; *Laurel Park, Inc.* v. *Pac,* 194 Conn. 677, 678–79 n.1, 485 A.2d 1272 (1984). "In a criminal case, the imposition of sentence is the final judgment of the court." *State* v. *Grotton,* 180 Conn. 290, 293, 429 A.2d 871 (1980). "Interlocutory rulings in criminal cases generally are not appealable." *State* v. *Spendolini,* 189 Conn. 92, 93, 454 A.2d 720 (1983). Such rulings, if erroneous, may be the basis for relief only when an appeal is ultimately taken after final judgment has been rendered. Practice Book § 3000.

---

§ 46b-135 (a), which provides for the right of counsel as well as "rights of confrontation and cross-examination" upon "the commencement of any proceeding on behalf of a delinquent child," was inapplicable to a transfer hearing.

The trial court did not have the benefit of the subsequent legislative history concerning a proposal in 1983 to substitute the word "proceeding" for the word "hearing" in § 46b-126. The bill proposing the substitution was amended on the floor of the General Assembly, where Representative Richard D. Tulisano explained the import of this action: "Mr. Speaker, the amendment reinstates the word 'hearing' rather than 'proceeding' in the file copy. After due consideration, going to the word 'hearing' has had lots of interpretations in court decisions and it really means the due process hearing rather than a proceeding. And, rather than leave that vague, on due consideration, we think it would be proper to do that.

"We also have made some other technical changes. We removed, however, the standard that was in there that said probable cause sufficient to support the issuance of a search warrant. And allowing a full hearing. It would require that the parties be before the court and not rely just on written testimony." 26 H. R. Proc., Pt. 17, 1983 Sess., p. 6036. We have previously discussed the implication of such subsequent legislative action. See *Lee* v. *Board of Education,* 181 Conn. 69, 75, 434 A.2d 333 (1980).

Since the prerequisite of imposition of sentence has not yet occurred, the transfer order in this case cannot be deemed a final judgment. *State* v. *Parker,* 194 Conn. 650, 652, 485 A.2d 139 (1984); *State* v. *Grotton,* supra, 293; *State* v. *Moore,* 158 Conn. 461, 463, 262 A.2d 166 (1969). The issue, therefore, is whether it falls within one of the narrowly defined exceptions to the general prohibition against appeals from interlocutory rulings. "An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio,* 191 Conn. 27, 31, 463 A.2d 566 (1983); *State* v. *Bell,* 179 Conn. 98, 99, 425 A.2d 574 (1979). The first alternative, termination of a separate and distinct proceeding, requires the order being appealed to be severable from the central cause to which it is related so that the main action can "proceed independent of the ancillary proceeding." *State* v. *Parker,* supra, 654; *Potter* v. *Appleby,* 136 Conn. 641, 643, 73 A.2d 819 (1950). It is clear that the prosecution of the defendant could not go forward if we were to hold that the order transferring him from the juvenile to the criminal division of the Superior Court could properly be appealed. This order, therefore, fails to satisfy the first *Curcio* alternative for a "separate and distinct proceeding."

The defendant relies principally upon the second *Curcio* alternative, claiming that the transfer order so concludes his statutory rights to treatment as a juvenile "that further proceedings cannot affect them." He appears to recognize that, if the transfer order should ultimately be found erroneous upon appeal after sentence has been imposed, the case could be remanded for further proceedings in the juvenile division. He maintains, however, that the element of privacy afforded by a juvenile proceeding could not be restored

by such a remand and also that incarceration of a juvenile in an adult prison while awaiting trial or pending appeal of a conviction as a nonjuvenile offender may result in irreparable harm.

Under circumstances similar to those presented here, initially we were persuaded to allow an appeal from the denial of an application for youthful offender treatment because of the deprivation of the statutory right to a private hearing that would be irreparably lost by the public trial held following denial of the application. *State* v. *Bell,* supra. Upon reconsideration, however, though we recognized that "[o]nce the defendant undergoes a public trial or is detained with the general jail population, his privacy cannot be restored by a subsequent private trial or by subsequent segregation detention," we overruled our earlier decision, holding the denial of an application for youthful offender treatment not to be immediately appealable. *State* v. *Longo,* 192 Conn. 85, 91, 469 A.2d 1220 (1984). In the closely analogous situation where an application for accelerated rehabilitation is denied we have similarly dismissed an appeal from such an interlocutory order. *State* v. *Spendolini,* supra; see *State* v. *Parker,* supra. We have not viewed the youthful offender or the accelerated rehabilitation statutes, when applicable, as creating a "right not to be tried" that can be vindicated only by allowing interlocutory appeals from denials of applications for these special procedures. *State* v. *Spendolini,* supra, 96. Such a right has been recognized only where the right to protection against double jeopardy is involved, because that constitutional right not only protects against being twice punished but also "is a guarantee against being twice put to *trial* for the same offense." (Emphasis in original.) *Abney* v. *United States,* 431 U.S. 651, 661, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977). Accordingly, we have entertained interlocutory appeals raising claims of infringement of the protection against dou-

ble jeopardy. *State* v. *Aillon,* 189 Conn. 416, 425, 456 A.2d 279, cert. denied, 464 U.S. 837, 104 S. Ct. 124, 78 L. Ed. 2d 122 (1983); *State* v. *Seravalli,* 189 Conn. 201, 206 n.6, 455 A.2d 852, cert. dismissed, 461 U.S. 920, 103 S. Ct. 2076, 77 L. Ed. 2d 291 (1983).

We have been disinclined, however, to extend the privilege of an interlocutory appeal in criminal cases beyond the double jeopardy circumstance. This reluctance stems principally from our concern that to allow such appeals would greatly delay the orderly progress of criminal prosecutions in the trial court, as vividly illustrated in the present instance where more than two years have elapsed while this appeal has been pending.[3] "[T]he opportunity to appeal in such a situation might well serve the purpose of parties who desire for their own ends to postpone the final determination of the issues." *State* v. *Kemp,* 124 Conn. 639, 647, 1 A.2d 761 (1938). It has been widely recognized that strict adherence to the final judgment rule is necessary in criminal cases because "the delays and disruptions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law." *DiBella* v. *United States,* 369 U.S. 121, 126, 82 S. Ct. 654, 7 L. Ed. 2d 614 (1962); see *Abney* v. *United States,* supra, 657; *State* v. *Seravalli,* supra, 204; *State* v. *Powell,* 186 Conn. 547, 551, 442 A.2d 939, cert. denied sub nom. *Moeller* v. *Connecticut,* 459 U.S. 838, 103 S. Ct. 85, 74 L. Ed. 2d 80 (1982). "The overarching principle involved in prosecution of crime is that justice be swift and sure. If the defendant is guilty then he should be brought to book and punished without delay and if he is innocent then the cloud of accusation should be removed as speedily as circumstances permit." *State* v. *Parker,* supra, 656.

[3] The transfer order was entered on August 24, 1982. The defendant was fifteen years of age at the time of the offenses, January 17, 1982, and has reached the age of eighteen at the present time.

This concern for the expeditious disposition of criminal cases has unquestionably resulted in some diminution in the effectiveness of appellate remedies for infringements upon constitutional rights as well as statutory privileges. The fourth amendment protection against the use of unlawfully obtained evidence cannot be as fully implemented by reversal of a conviction on appeal following a trial as by suppressing such evidence before trial through an interlocutory appeal. This consideration has not induced any modification of the rule barring pretrial review in such cases. *DiBella* v. *United States*, supra, 131. Even where the claimed unconstitutional seizure could be wholly prevented by an interlocutory appeal we have adhered to the rule. *State* v. *Grotton*, supra, 293 (confining *State* v. *Acquin*, 177 Conn. 352, 416 A.2d 1209 (1979), "to its facts"). Nor have we deviated despite our realization that the protection afforded youthful offenders against publicity[4] and confinement with older prisoners[5] cannot be fully

---

[4] The confidentiality of juvenile records and proceedings established by General Statutes §§ 46b-122 and 46b-124 cannot eliminate the publicity that frequently attends the commission of serious juvenile offenses, such as those which are transferable to the regular criminal docket pursuant to §§ 46b-126 and 46b-127. By prohibiting disclosure of records and proceedings in juvenile matters, §§ 46b-122 and 46b-124 do, however, curtail the additional publicity that a public trial would generate. The existence of statutes intended to protect juveniles from publicity concerning their crimes does not prevent the press from disclosing any information which may have come into its possession. *Near* v. *Minnesota*, 283 U.S. 697, 718-20, 51 S. Ct. 625, 75 L. Ed. 1357 (1931). These statutes, therefore, do not completely prevent or abolish publicity in juvenile cases, but by restricting accessibility to juvenile records and proceedings may reduce the amount of publicity generated.

[5] General Statutes (Rev. to 1981) § 46b-131 provides generally that a juvenile offender shall not be "confined in a community correctional center or lockup, or in any place where adults are or may be confined . . . ." Although the protection afforded by such statutorily mandated segregation ceases upon effectuation of a transfer order pursuant to § 46b-126, it does not follow that a transferred juvenile offender must necessarily be held while awaiting trial in a nonjuvenile facility, such as an adult prison. The commissioner of correction upon acquiring custody of a transferred juvenile may transfer him "to any other appropriate state institution with

restored by our decree of further proceedings after a successful appeal from a conviction following an erroneous denial of an application pursuant to the statute. *State* v. *Longo,* supra, 91. Vindication at the appellate level can seldom regain all that has been lost by an erroneous determination of a cause in the trial court. This recognition of the imperfection of appellate remedies is inherent in the formulation of the second *Curcio* alternative for allowing an interlocutory appeal: "where the order or action so concludes the rights of the parties that further proceedings cannot *affect* them." (Emphasis added.) *State* v. *Curcio,* supra, 31. Certainly a remand setting aside the conviction of a person who

---

the concurrence of the superintendent of such institution or to the department of children and youth services when the commissioner of correction finds that the welfare or health of the inmate requires it." General Statutes § 18-87. The commissioner of children and youth services must find that the juvenile, whose consent to such a transfer is necessary, would benefit before agreeing to accept his custody. Id. It should also be noted that separate detention facilities for youths between the ages of sixteen and twenty-one years are maintained at Cheshire and Niantic, which are under the jurisdiction of the commissioner of correction who has full authority to transfer inmates thereto from other correctional facilities. General Statutes §§ 18-65a, 18-73, 18-82, 18-86. If these statutes are effectively implemented by the department of correction and the department of youth services, as we are entitled to assume, adequate protection is afforded to juveniles from the evils of confinement with adult offenders.

The concern of the dissenters that the right of a juvenile to segregation "will be lost irreparably" unless appeals from transfer orders are permitted does not take into account the responsibility of the commissioner of correction under § 18-87 to transfer to more appropriate detention facilities, such as those operated by the department of children and youth services, youths within his custody whose "welfare or health" require it. This responsibility is not diminished simply because the commissioner must be accorded a reasonable discretion in determining whether such a transfer is necessary. It would be incongruous to construe the "may transfer" phrase in § 18-87 to give the commissioner of correction an unbridled discretion not to make such a transfer once he has found that "the welfare or health of the inmate requires it." Though the right to statutorily mandated segregation is suspended while a juvenile transferred to the regular criminal docket is awaiting trial, it cannot be assumed that the commissioner of correction will not select an appropriate facility for his confinement during that period in accordance with his statutory authority and duty.

is determined upon appeal to have been entitled to youthful offender or accelerated rehabilitation treatment does *affect* the rights of the parties, though it cannot wholly dissipate prior publicity or other harms which would not have been suffered if the erroneous ruling had not occurred. The additional effectiveness of the appellate remedy in implementing those rights which might be gained by allowing interlocutory appeals is far outweighed in our judgment by the substantial delay in the resolution of criminal cases which would likely follow.

The practical considerations which have led us to dismiss interlocutory appeals from the denial of applications for youthful offender treatment apply with virtually equal force to the transfer of this defendant from the juvenile division to the regular criminal session of the Superior Court. Although the consequences of a public trial and incarceration with the general prison population may be more serious for a youth below the age of sixteen, ordinarily treated as a juvenile, as compared to one who is seventeen and eligible for treatment as a youthful offender, the statutory criteria for a transfer order require the trial court to focus directly upon this potential for harm by requiring findings that "(2) the child is not amenable to treatment in any institution or state agency or other available facility designed for the care and treatment of children to which said court may effect placement of such child which is suitable for his care or treatment and (3) the sophistication, maturity and previous adjudications of the juvenile are such that the facilities used for regular criminal sessions of the superior court provide a more effective setting for the disposition of the case and the institutions to which said court may sentence a defendant sixteen years of age or over are more suitable for the care and treatment of such child." General

Statutes § 46b-126.[6] No such review of the background of a seventeen year old is statutorily required before he may be incarcerated with other prisoners, though segregation is mandated once his motion for an investigation of his eligibility to be adjudged a youthful offender has been granted. General Statutes § 54-76h. We are not persuaded that the potential for harm to juvenile offenders from erroneous transfer orders is so much greater in kind or degree than that which a seventeen year old, improperly denied the benefits of youthful offender treatment, may suffer in awaiting redress on appeal from a final judgment that a different conclusion from that reached in *State* v. *Longo*, supra, as to the availability of an interlocutory appeal is warranted. The problem of delay which such an appeal entails is no less significant in the disposition of cases involving those below age sixteen than those above that age.

The defendant points to a refinement of the second *Curcio* alternative recently articulated in *Longo:* "In order to satisfy the second prong of the *Curcio* test the defendant must do more than show that the trial court's decision threatens him with irreparable harm. The defendant must show that that decision threatens to abrogate a right that he or she *then* holds." (Emphasis in original.) Id., 91. It is claimed here that under the statutory structure pertaining to persons under sixteen years of age accused of crime the defendant "holds" a right to be prosecuted only as a juvenile and that this right persists until his juvenile status has been

---

[6] We are aware of the existence of a substantial body of law created in other jurisdictions pertaining to the immediate appealability of juvenile transfers. We do not find these cases to be very helpful, however. "There is no discernable pattern in the procedures of the various States as to the reviewability of such orders, and because the matter depends so largely upon the varying provisions of the applicable statutes, nothing is to be gained by a detailed analysis of the authorities from other jurisdictions." *People* v. *Jiles,* 43 Ill. 2d 145, 148, 251 N.E.2d 529 (1969).

abrogated by a transfer order pursuant to § 46b-126. In this respect it must be conceded that the situation of a juvenile is distinguishable from that of a seventeen year old charged with a crime, whose status as a "youthful offender" entitled to the special procedures available under General Statutes §§ 54-76b through 54-76o cannot be recognized "until a court accords the defendant that status." *State* v. *Longo,* supra, 92. This distinction, however, has little bearing upon where the balance should be struck in fashioning effective appellate remedies for infractions of statutory or constitutional rights, whether characterized as existing or merely potential. "It is important that criminal proceedings not be diverted from their orderly progress to trial and judgment by holding out to the litigants an invitation to speculate about what interlocutory rulings this court may entertain." *State* v. *Longo,* supra, 94 (*Peters, J.,* concurring.) The deleterious impact upon the efficient administration of our criminal justice system from making interlocutory appeals more widely available would in no way be mitigated by the circumstance that the particular right involved, under the pertinent statutory structure, required the exercise of court discretion for its disaffirmance rather than for its recognition. To the extent that we may have indicated otherwise in *Longo,* that portion of the opinion is accordingly modified.

The appeal is dismissed.

In this opinion PETERS, C. J., and DANNEHY, J., concurred.

ARTHUR H. HEALEY, J., dissenting. I agree with Justice Parskey that under the second prong of *State* v. *Curcio,* 191 Conn. 27, 31, 463 A.2d 566 (1983), "a juvenile defendant does have a right which will be lost irreparably if the trial court's order granting the motion to transfer is allowed to stand without immediate appel-

late review." I am also inclined to agree that the majority opinion denigrates two important statutory rights of a juvenile charged with delinquency: the right to a private hearing, General Statutes § 46b-122; and the right, if incarcerated, to be segregated from adult criminals, General Statutes (Rev. to 1981) § 46b-131. The result of the majority opinion, practically speaking, is to nullify these two rights.[1] This, I submit, imputes a very strange and unlikely intent to the legislature in prescribing them. The majority's change in the second prong of *Curcio* neither affords predicability nor stability to this court's final judgment jurisprudence in the criminal area. See note, "The Evolving Tests for a Final Judgment in Connecticut Criminal Prosecutions: *State* v. *Longo*," 16 Conn. L. Rev. 637 (1984). While I fully agree with the majority that the facts, insofar as they are set out, involve charges of a serious crime, that still does not justify employing this hard case to foster bad law, especially in view of the thoughtful statutory scheme embodied in the legislative enactments which form the backdrop of this appeal. The majority opinion makes significant judicial incursions into statutorily-created rights for juveniles.

While I believe that the transfer order is a final judgment within the rationale given by Justice Parskey, I

---

[1] In an attempt to suggest that the statutory right to a private hearing under General Statutes § 46b-122 is not really nullified by their opinion, the majority points to General Statutes § 46b-124. While recognizing, as they must, that their position does result in publicity, they nevertheless argue that § 46b-124 by prohibiting disclosure of records and proceedings in juvenile matters does "curtail the additional publicity that a public trial would generate." Two points should be made to counter this "justification." First, as one court said: "[I]n common parlance, or in law composition, the word 'curtail' has no such meaning as 'abolish.' " *State* v. *Edwards*, 207 La. 506, 511, 21 So. 2d 624 (1945). Rather, it means " 'to cut off the end, or any part, of; hence to shorten; abridge; diminish; lessen; reduce.' " Id. Second, the statutory right to a private hearing in § 46b-122 does not talk at all in terms of relativity, of something is to be diminished, lessened or reduced. It confers a right that is not to be diluted, let alone nullified.

write separately because I also deem it to be immediately reviewable for two other reasons. The first are the rationales set out in the dissenting opinions in *State* v. *Longo,* 192 Conn. 85, 95, 469 A.2d 1220 (1984), and in *State* v. *Spendolini,* 189 Conn. 92, 97, 454 A.2d 720 (1983). Little else need be said for those rationales, however, as they apparently have not fared well in Connecticut final judgment jurisprudence. Nevertheless, it must be recognized that common sense and logic dictate that, with the change from juvenile to adult status in our criminal system in the case now before us, significant statutory rights are truly irretrievably lost.

The second reason is that I believe we should align ourselves with the great number of states that allow direct appeals from orders transferring juvenile matters for criminal proceedings.[2] See *In re Doe,* 86 N.M. 37, 519 P.2d 133 (1974) (which sets out such jurisdictions); see also *People of Guam* v. *Kingsbury,* 649 F.2d 740, 742 n.3 (9th Cir. 1981). Moreover, I note that the IJA-ABA Juvenile Justice Standards Project advocates such a pretrial review. See Institute of Judicial Administration and American Bar Association Joint Commission, Juvenile Justice Standards Project: Standards Relating to Transfers Between Courts (1980) § 2.4 and Standards Relating to Appeals and Collateral Review (1980) § 2.1 B.

---

[2] This transfer order falls squarely within the collateral order exception articulated in *Cohen* v. *Beneficial Loan Corporation,* 337 U.S. 541, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949). In *Cohen,* the United States Supreme Court explicated it thus: "This decision [for which appellate review was sought] appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen* v. *Beneficial Loan Corporation,* supra, 546. The *Cohen* "collateral order" rationale has been applied to juveniles in the criminal area. See, e.g., *In re John Doe I,* 50 Hawaii 537, 444 P.2d 459 (1968); *State* v. *Evangelista,* 134 N.J. Super. 64, 338 A.2d 224 (1975); *In re Doe II,* 86 N.M. 37, 519 P.2d 133 (1974).

I, too, share the concern of the majority about misuse of the appellate process by parties " 'who desire for their own ends to postpone the final determination of the issues.' " The majority's reluctance, however, to extend the "privilege" of an interlocutory appeal beyond the double jeopardy circumstance stems, they say, "principally from [their] concern that to allow such appeals would greatly delay the orderly progress of criminal prosecutions in the trial court . . . . " This reluctance becomes ominous when they also articulate that the " 'overarching principle involved in prosecution of crime is that justice be swift and sure.' " I do not quarrel with that statement but I question, as I did in *State* v. *Parker,* 194 Conn. 650, 660–65, 485 A.2d 139 (1984), whether the result in this case, while it may be swift and sure, more significantly may not even be "justice." The majority hesitantly concedes that the "concern for the expeditious disposition of criminal cases has *unquestionably resulted in some diminution in the effectiveness of appellate remedies for infringements upon constitutional rights as well as statutory privileges."* (Emphasis added.) It is plain that in this case we are talking, not about "statutory privileges," but rather about "statutory rights." The majority nevertheless admits that a future remand setting aside a conviction of one who is found on appeal to have been entitled to youthful offender or accelerated rehabilitation treatment will affect the rights of this accused. They also admit that later appellate review in such a case "cannot wholly dissipate prior publicity *or other harms* which would not have been suffered if the erroneous ruling had not occurred." (Emphasis added.) The justification for this, however, the majority opines, is that "[t]he additional effectiveness of the appellate remedy . . . which might be gained by allowing interlocutory appeals *is far outweighed* in our judgment by the substantial delay in the resolution of criminal cases which would likely follow." (Emphasis added.) Going

on, my colleagues in the majority determine that the "practical considerations" that have led this court to dismiss interlocutory appeals from the denial of youthful offender treatment "apply with virtually equal force" to the transfer of the defendants from the juvenile division to the regular criminal session of the Superior Court. The majority reaches this result although expressing concern about "the consequences of the public trial and incarceration with the general prison population . . . ." They say this even though they admit relevant statutory criteria require the court "to focus directly upon this potential for harm . . . ." See General Statutes (Rev. to 1981) § 46b-126.

As I noted initially, the underlying crime charged is a serious one and it remains to be evaluated in another forum, but even those circumstances do not, in my opinion, justify denying review now of the statutorily conferred rights involved. I recognize that there is a firm policy, with good reason, against interlocutory or piecemeal appeals in both criminal and civil cases. See, e.g., *Abney* v. *United States,* 431 U.S. 651, 656–57, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977); *State* v. *Powell,* 186 Conn. 547, 551, 442 A.2d 939, cert. denied sub nom. *Moeller* v. *Connecticut,* 459 U.S. 838, 103 S. Ct. 85, 74 L. Ed. 2d 80 (1982). Nevertheless, I believe those concerns are outweighed by addressing this matter now before any trial. We are dealing with rights conferred by a thoughtfully considered statutory scheme. We are dealing with a significant change of status, i.e., from juvenile to adult. We are dealing with a matter jurisdictionally distinct from the potential adult criminal proceeding. We are not dealing, as in many interlocutory appeals, with the interruption of a trial in progress. We are not dealing with the panoply of ordinary pretrial interlocutory-review requests. We are dealing with rights, not privileges, that will be irretrievably lost if

not reviewed now. I regret the step taken by the majority in this opinion and the message which I believe it signals.

Although I dissent and would reach the merits, I conclude, under the circumstances, that I need not discuss them. See *State* v. *Longo,* supra, 98.

Accordingly, I dissent.

PARSKEY, J., dissenting. Appeals may be taken to this court from final judgments of the superior court. General Statutes § 51-197a. Ordinarily, in a criminal case, the imposition of sentence is the final judgment of the court. *State* v. *Parker,* 194 Conn. 650, 652, 485 A.2d 139 (1984); *State* v. *Grotton,* 180 Conn. 290, 293, 429 A.2d 871 (1980). There are certain interim orders, however, which are also final judgments. In *State* v. *Curcio,* 191 Conn. 27, 463 A.2d 566 (1983), this court established a two-pronged test to determine which interim orders are final judgments. We there stated (p. 31) that an interim order is a final judgment if (1) it terminates a separate and distinct proceeding or (2) it so concludes the rights of the parties that further proceedings cannot affect them. I agree with the majority that the motion to transfer the case of a juvenile to the regular criminal docket is not a separate and distinct proceeding. *State* v. *Parker,* supra. Our differences revolve around the second *Curcio* prong. In my view a juvenile defendant does have a right which will be lost irreparably if the trial court's order granting the motion to transfer is allowed to stand without immediate appellate review.

I

The fact that a defendant has an actual right, whether constitutional or statutory, does not mean that he is entitled to immediate review of its denial. The test is whether absent immediate review the right cannot be

vindicated at all. If the right is capable of vindication at some point then the fact that a defendant must await the outcome of a trial before obtaining redress is merely one of the unfortunate by-products of citizenship in a free society. *State* v. *Parker,* supra, 658. Thus, the sixth amendment right to a speedy trial; *United States* v. *MacDonald,* 435 U.S. 850, 98 S. Ct. 1547, 56 L. Ed. 2d 18 (1978); the fourth amendment right to be free from unreasonable searches and seizures; *Cogen* v. *United States,* 278 U.S. 221, 49 S. Ct. 118, 73 L. Ed. 275 (1929); and a statutory grant of immunity from prosecution; *Heike* v. *United States,* 217 U.S. 423, 30 S. Ct. 539, 54 L. Ed. 821 (1910); are not entitled to interlocutory review because these rights may be vindicated post-trial. So too with applications for accelerated rehabilitation; *State* v. *Spendolini,* 189 Conn. 92, 454 A.2d 720 (1983); and a motion for dismissal of charges upon completion of the accelerated rehabilitation program. *State* v. *Parker,* supra.

There are cases, few in number, in which an appeal at an interim stage of the prosecution must be allowed if the defendant's legal right, because of its nature, is to be vindicated at all. One such case involves double jeopardy. *Abney* v. *United States,* 431 U.S. 651, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977). The reasoning here is that the rights conferred on a criminal accused by the double jeopardy clause, namely the right not to be placed in jeopardy a second time, would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence. Id., 660. Another case involves the rights conferred upon legislative officials by the speech and debate clause of the constitution of the United States. *United States* v. *Helstoski,* 442 U.S. 477, 99 S. Ct. 2432, 61 L. Ed. 2d 12 (1979); *Dombrowski* v. *Eastland,* 387 U.S. 82, 87 S. Ct. 1425, 18 L. Ed. 2d 577 (1967). The policy consideration here is that the speech or debate

clause was designed to protect congresspersons not only from the consequences of the litigation's results, but also from the burden of defending themselves, and that if a member of Congress is to avoid exposure to being questioned for acts done in either house his challenge to the indictment must be reviewable before exposure occurs. *Helstoski* v. *Meanor,* 442 U.S. 500, 508, 99 S. Ct. 2445, 61 L. Ed. 2d 30 (1979). The statutory rights accorded juveniles bring their cases within the narrow class of cases involving final judgments occurring at the interim stage of prosecution and therefore entitled to interim appellate review.

Any person under sixteen years of age is a "child"; General Statutes § 46b-120; whose offenses may not be prosecuted in the superior court; § 46b-145; but instead are to be processed as juvenile matters. § 46b-121. An offense, which if committed by an adult would be a crime, is to be regarded as a delinquency if committed by a child. § 46b-145. A juvenile who is charged with a delinquency has two important statutory rights, namely, the right to a private hearing; § 46b-122; and, if incarcerated, the right to be segregated from adult criminals. § 46b-131. See *State* v. *Longo,* 192 Conn. 85, 90–91, 469 A.2d 1220 (1984); *State* v. *Bell,* 179 Conn. 98, 99, 425 A.2d 574 (1979). It is to state the obvious to observe that both of these rights would be lost irreparably by the transfer of a juvenile's case to the regular criminal docket. Once subjected to a public trial the juvenile's right of privacy has not merely been infringed; it has been shattered. And once a juvenile has been mingled with adult criminals, in some cases possibly as long as two to three years, while his criminal case winds its way through the trial and appellate process, he will have been exposed to the very risk that segregated confinement is designed to avoid. *Curcio* posits that any ruling which so concludes the rights of a party that fur-

ther proceedings cannot affect them is a final judgment. The appeal from that judgment is not a matter of judicial discretion or judicial logomachy but rather is a matter of statutory right.

In *State* v. *Longo,* supra, we held that the denial of an application for youthful offender status was not a final judgment. *Longo* involved a potential rather than an actual right. Reasonable people may differ over whether the rule of finality encompasses both potential and actual rights. But where, as in this case, the issue involves the abrogation of actual rights the only question that remains is whether the right is capable of being vindicated by a postconviction appeal. If it cannot, the second *Curcio* alternative has been satisfied and appeal is then a matter of course.

Although the situations warranting interlocutory appeal in criminal cases are rare, it is inaccurate to refer to them as exceptions to the final judgment rule. They are in fact examples of it. *Curcio* prescribed the litmus tests for ascertaining what interlocutory orders are final judgments. Once either test is satisfied the order is a final judgment and the appeal from that order is a matter of statutory right. If neither of the *Curcio* tests is satisfied, the order is not a final judgment and there is no right of appeal because the legislature has not authorized a right of appeal from interlocutory orders in criminal cases.

Although the second *Curcio* alternative has been satisfied in this case, the majority nevertheless denies the juvenile defendant an interlocutory appeal. The rationale for this curious decision is that others similarly situated have also been denied an interlocutory review and the potential for harm from an erroneous decision in this case is no greater in kind or degree from the others to warrant a different result here. The trouble with this rationale is that its focus is misplaced. The

irreparable loss which is the focus of *Curcio* is the loss of a valuable right. The fact that once lost the right cannot be restored by later review is sufficient under *Curcio* to make the order which abrogates the right a final judgment. The majority would change this rule by declaring that in criminal cases, with the exception of double jeopardy claims, no orders, however conclusively they affect the rights of the parties, shall be subject to intermediate appellate review. Whether this would be a wise policy I need not consider. It is sufficient to observe that in arriving at this result the majority has not only rendered a major modification of *Curcio,* but, even more important, has ridden roughshod over rights created by state statute. Since the majority has spoken I must respect its judgment but I do not agree with it. What it says in effect is that not all interim final judgments are appealable but only those whose impact we regard as sufficiently harmful to warrant our early consideration. If the appealability of interim final judgments were addresssed to our discretion the decision would turn on appellate policy consideration but since the right of appeal is determined by statute such policy concerns are foreclosed.

## II

Addressing the merits, General Statutes § 46b-126 provides that any child who has attained the age of fourteen and who has been charged, inter alia, with the commission of a class A felony may have his case transferred to the regular criminal docket provided that the court after investigation and a hearing has made written findings that there is probable cause to believe that (1) the child has committed the acts for which he is charged; (2) the child is not amenable to treatment in a state institution designed for children; and (3) because of his sophistication, maturity and previous juvenile adjudications the facilities used for regular criminal sessions of the superior court provide a more effective set-

ting for the disposition of the case. The trial court held an evidentiary hearing respecting the second and third criteria but refused an evidentiary hearing with respect to the first criterion. The trial court limited the proceeding respecting that criterion to a consideration of affidavits, following a procedure found to satisfy constitutional requirements for custodial detention. *Gerstein* v. *Pugh,* 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975).

A "hearing" has been defined as a "[p]roceeding of relative formality (though generally less formal than a trial), generally public, with definite issues of fact or of law to be tried, in which witnesses are heard and parties proceeded against have right to be heard, and is much the same as a trial and may terminate in a final order." Black's Law Dictionary (5th Ed.) p. 649. "Our cases consistently recognize the generally adversarial nature of a proceeding considered a 'hearing,' in which witnesses are heard and testimony is taken." *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 470, 378 A.2d 547 (1977).

In construing language contained in a statute, commonly approved usage should control. *State* v. *Antrum,* 185 Conn. 118, 122, 440 A.2d 839 (1981). Furthermore "the principle of construction everywhere applied . . . [is] that when a statute uses a word in a certain sense, it is to be presumed to have been used in the same sense in all other parts of the statute wherever it occurs." *Beacon Falls* v. *Seymour,* 44 Conn. 210, 217 (1876). It follows that absent a context showing a contrary meaning, the "hearing" referred to in the statute is an evidentiary hearing. In any event, there is nothing in the statute to suggest that the type of hearing to be held respecting the first criterion is to be any different from the hearing with respect to the other criteria. I would, therefore, set aside the judgment and remand the case for further proceedings consistent with this opinion.

The trial court, citing *Breed* v. *Jones,* 421 U.S. 519, 95 S. Ct. 1779, 44 L. Ed. 2d 346 (1975), concluded that were it to conduct an evidentiary hearing in order to determine whether there was probable cause to believe that the juvenile committed the offenses with which he was charged the finding of probable cause would constitute an adjudication and that thereafter the juvenile could not be tried in the regular criminal court without running afoul of the double jeopardy clause. It concluded therefore that in order to avoid constitutional problems the hearing to be conducted with respect to the first criterion could not be an evidentiary one. I do not agree. A finding of probable cause is not an adjudication of guilt. It is merely a determination that there is substantial evidence of the defendant's complicity of the offense charged such that he ought to stand trial in adult court. Such determinations do not implicate the double jeopardy clause. In *Breed* the Supreme Court stated (p. 538 n.18) that "[w]e note that nothing decided today forecloses States from requiring, as a prerequisite to the transfer of a juvenile, substantial evidence that he committed the offense charged, so long as the showing required is not made in an adjudicatory proceeding. . . . The instant case is not one in which the judicial determination was simply a finding of, *e.g.* probable cause. Rather, it was an adjudication that respondent had violated a criminal statute." The hearing and finding contemplated by § 46b-126 is the very probable cause hearing which the Supreme Court addressed in the foregoing footnote. The trial court's constitutional concerns do not call for a different statutory construction than has been noted above or for a different result.