STATE OF CONNECTICUT *v.* ORLANDO FIGUEROA
(8124)

DUPONT, C. J., BORDEN, SPALLONE, DALY, O'CONNELL, NORCOTT, FOTI and LAVERY, Js.

Argued February 14—decision released May 4, 1990

*Ronald T. Murphy,* for the appellant (named defendant).

*Timothy J. Sugrue,* deputy assistant state's attorney, with whom were *John M. Massemeno,* assistant state's attorney, and, on the brief, *John M. Bailey,* state's attorney, for the appellee (state).

*Ralph G. Elliot,* for the appellees (The Hartford Courant et al.).

O'CONNELL, J. The defendant appeals from the trial court's order to unseal a police report. The matter came to this court in the following context.

On April 4, 1989, the defendant was arrested and charged with the murder of a thirteen year old male. The next day, he was arraigned in Part B of the Superior Court. The court, *Kocay, J.,* relying on a three page police report, found probable cause for his arrest and transferred the case to Part A of the Superior Court. Practice Book § 650; see *Gerstein* v. *Pugh,* 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975). At the conclusion of the arraignment, the court ordered that the police report be sealed and kept in the state's attorney's office rather than in the clerk's file.

On April 12, 1989, The Hartford Courant and Lynn Tuohy, an employee thereof, moved to intervene and to vacate the sealing order.[1] On the same date, the state

[1] On June 15, 1989, The Hartford Courant and Lynn Tuohy moved to dismiss the appeal for lack of subject matter jurisdiction. We denied the motion without opinion, leaving the matter for possible further consideration as part of the main appeal, when it could be fully briefed and argued.

moved to extend the sealing of the report for an additional two weeks. The court, *Norko, J.*, ordered the report taken from the state's attorney's office and placed in the clerk's file. Then, after hearing arguments and receiving briefs, it granted the motion to intervene and vacated the sealing order. The court stayed its order unsealing the report, however, pending this appeal.

The state appealed from the allowance of intervention and the unsealing order, but withdrew its appeal, however, under the impression that the appeal suffered from certain procedural defects. The defendant appealed only from the unsealing order, and that is all that is before this court at this time.[2] Before we can reach the merits of this question though, we must first determine whether the defendant may appeal to this court at this stage of the proceedings.

There is no constitutional or common law right to appeal. *Chanosky* v. *City Building Supply Co.*, 152 Conn. 449, 451, 208 A.2d 337 (1965). The right of appeal is purely statutory; *State* v. *Audet*, 170 Conn. 337, 341, 365 A.2d 1082 (1976); and appellate tribunals may hear only those appeals over which they have been granted jurisdiction by statute. The principal statutory prerequisite to invoking our jurisdiction is that the ruling from which an appeal is sought must constitute a "final judgment." See General Statutes §§ 51-197a and 52-263.[3]

---

[2] At the court's request, the parties briefed the issue of whether the trial court was correct in granting intervenor status to The Hartford Courant and Lynn Tuohy. Our conclusion that this court has no jurisdiction to hear the appeal ends any further consideration of that matter. Whenever a court finds a case on its docket over which it has no jurisdiction, it may proceed no further and must dismiss the matter. *Kinney* v. *State,* 213 Conn. 54, 58, 566 A.2d 670 (1989). Accordingly, we do not reach the question of the propriety of granting intervenor status to The Hartford Courant and Tuohy.

[3] This court's jurisdiction is established by General Statutes §§ 51-197a and 52-263. We have no authority to hear appeals that do not come within the parameters of these statutes. General Statutes § 51-197a (a) provides

In a criminal case, the imposition of sentence constitutes the appealable final judgment. *State* v. *Seravalli*, 189 Conn. 201, 205, 455 A.2d 852, cert. denied, 461 U.S. 920, 103 S. Ct. 2076, 77 L. Ed. 2d 291 (1983). We cannot hear appeals from preliminary rulings of the trial court, except in the case of several narrowly defined situations, none of which exists here.[4] Piecemeal appeals, particularly in criminal proceedings, are not only outside our jurisdiction, but also contravene the long-standing case law of this state and the United States. See *DiBella* v. *United States,* 369 U.S. 121, 126, 82 S. Ct. 654, 7 L. Ed. 2d 614 (1962); *State* v. *Kemp,* 124 Conn. 639, 646–47, 1 A.2d 761 (1938).

in pertinent part: "Appeals *from final judgments* or actions of the superior court shall be taken to the appellate court . . . ." (Emphasis added.) General Statutes § 52-263 provides: "Upon the trial of all matters of fact in any cause or action in the superior court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction *from the final judgment* of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8, 8-9, 8-28 and 8-30." (Emphasis added.)

See also Practice Book § 4000, which provides: "If a party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, that party may appeal *from the final judgment* of the court or of such judge, or from a decision setting aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in Gen. Stat. §§ 8-8, 8-9, 8-28 and 8-30." (Emphasis added.)

[4] For example, a defendant may take an interlocutory appeal of a double jeopardy claim. *State* v. *Seravalli,* 189 Conn. 201, 206 n.6, 455 A.2d 852 (1983). In addition, General Statutes § 52-265a (a) provides in part that "any party to an action who is aggrieved by an order or decision of the superior court in any action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the supreme court within two weeks from the date of the issuance of the order or decision." See also General Statutes §§ 31-118 and 49-35c. Appeals of rulings on motions to dismiss or suppress following judgments entered upon conditional pleas of nolo contendere are also allowed. Practice Book § 4003 (b).

Our courts have not been inclined to extend the privilege of an interlocutory appeal in criminal cases because the delays and disruptions attendant on such appeals are contrary to the effective and fair administration of the criminal law. *State* v. *Curcio,* 191 Conn. 27, 30–31, 63 A.2d 566 (1983). "The overarching principle involved in prosecution of crime is that justice be swift and sure. If the defendant is guilty then he should be brought to book and punished without delay and if he is innocent then the cloud of accusations should be removed as speedily as circumstances permit." *State* v. *Parker,* 194 Conn. 650, 656, 485 A.2d 139 (1984). Consequently, it has been held that the court does not have jurisdiction to hear appeals from certain rulings because they are not final judgments. Among these exceptions are the transfer of a case from the juvenile to the regular criminal docket; *In re Juvenile Appeal (85-AB),* 195 Conn. 303, 312, 488 A.2d 778 (1985); denial of an application for youthful offender status; *State* v. *Longo,* 192 Conn. 85, 90–91, 469 A.2d 1220 (1984); denial of an application for accelerated rehabilitation; *State* v. *Spendolini,* 189 Conn. 92, 97, 454 A.2d 720 (1983); denial of a motion to disqualify an attorney; *Burger & Burger, Inc.* v. *Murren,* 202 Conn. 660, 669–70, 522 A.2d 812 (1987); and the entry of a nolle prosequi, or denial of a speedy trial claim. *State* v. *Lloyd,* 185 Conn. 199, 207, 440 A.2d 867 (1981).

Interlocutory rulings of a trial court may be treated as final judgments for purposes of appeal "in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio,* supra, 31. The defendant argues that he has satisfied both prongs of this test. We disagree.

Where "the interlocutory ruling is merely a step along the road to final judgment then it does not satisfy

the 'separate and distinct proceeding' requirement of the first prong of *Curcio.*" *State* v. *Parker,* supra, 653. To qualify under *Curcio,* "[i]t must appear that the interlocutory ruling will not impact directly on any aspect of the prosecution." Id. We are not persuaded that the trial court's ruling to unseal this police report can be construed as a separate and distinct proceeding because it was part and parcel of the defendant's prosecution for murder. We decline to hold as a matter of law that a proceeding involving a police report, which was sufficient for the arraigning court to hold the defendant for trial, would not have any impact on the prosecution. Consequently, the defendant has not satisfied the first *Curcio* prong that the order terminate a separate and distinct proceeding.

The defendant also contends that he has satisfied the second prong of Curcio because the trial court's order so concludes the rights of the parties that further proceedings cannot affect them. To support this assertion he argues that the contents of the police report, when unsealed, will probably cause substantial pretrial publicity, thus permanently damaging his right to a fair trial. We are not persuaded that prevention of pretrial publicity bears such reasonable relation to concluding the rights of the parties that further proceedings could not affect them. Indeed, the prosecution will continue regardless of the release or continued sealing of the police report. The defendant has available to him the usual means of ensuring against prejudicial pretrial publicity (e.g., motion for change of venue or careful voir dire examination of prospective jurors). Furthermore, the defendant erroneously assumes that he has an automatic right to shield himself from pretrial publicity. "[Such] publicity, even if pervasive and concentrated, cannot be regarded as leading automatically in every kind of criminal case to an unfair trial." *Nebraska Press Assn.* v. *Stuart,* 427 U.S. 539, 565, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976).

"In order to satisfy the second prong of the *Curcio* test the defendant must do more than show that the trial court's decision threatens him with irreparable harm. The defendant must show that [the] decision [of the trial court] threatens to abrogate a right that he or she *then* holds"; (emphasis in original) *State* v. *Longo,* supra, 91; such as the defendant's right not to be tried twice for the same offense. Id. The defendant has not demonstrated that he has sustained any identifiable harm to his fair trial rights from the trial court's decision, and it is conceivable that he might never suffer any harm. The latter would be the result, for instance, of a failure to go to trial as a consequence of a nolle, a dismissal or a disposition pursuant to a plea agreement.[5]

The defendant is not without remedy. In the event that he is convicted and is of the opinion that the verdict has been tainted by pretrial publicity, he may challenge the trial court's unsealing of the police report in a timely posttrial appeal.

As an additional reason for claiming satisfaction of the second *Curcio* test, the defendant argues that unsealing the police report will injure the reputation of the minor victim. It is rudimentary jurisprudence that the party claiming error must be aggrieved by the decision of the trial court. *Milford* v. *Local 1566,* 200 Conn. 91, 96, 510 A.2d 177 (1986). The defendant laudably desires to protect the reputation of the person he is alleged to have killed. We are not aware, however, of any case law that gives him the requisite standing to appeal any decision based on injury to his victim's reputation.

---

[5] Subsequent to oral argument, the defendant pleaded guilty to the charges against him. Despite his plea, the appeal is not moot because the defendant has not, as yet, been sentenced. As indicated in the text, the imposition of sentence constitutes the final appealable judgment in a criminal case. *State* v. *Seravalli,* 189 Conn. 201, 205, 455 A.2d 852 (1983).

We conclude that this court lacks subject matter jurisdiction to hear this appeal because it is not from a final judgment.

The appeal is dismissed.

In this opinion DUPONT, C. J., BORDEN, SPALLONE, DALY, NORCOTT and FOTI, Js., concurred.

LAVERY, J., dissenting. I cannot join the majority opinion because I disagree with the majority's refusal to find that the defendant appealed from a final judgment, thus avoiding the necessity of reaching the merits of this important appeal. Therefore, I respectfully dissent.

I

I disagree with the majority's final judgment analysis in two respects. First, I disagree that this case can be considered to present a normal, criminal appeal, and, second, I disagree that this case fails the final judgment test promulgated in *State* v. *Curcio,* 191 Conn. 27, 27–33, 463 A.2d 566 (1983).

Few things in the law are as basic or as certain as the equation underlying a criminal prosecution: The state prosecutes and the accused defends. *State* v. *Parker,* 194 Conn. 650, 653, 485 A.2d 139 (1984). This simple formula has evolved through many centuries of common law and has pertained, unchanged, under our own constitutions and laws for two centuries. Nothing in the United States or Connecticut constitutions can be read to contemplate, let alone countenance, the intrusion into criminal prosecutions of third parties uninterested in the innocence or guilt of the accused.[1] As the majority notes, "[t]he overarching principle involved in prosecution of crime is that justice be swift and sure. If the defendant is guilty then he should be

---

[1] See section II, infra.

brought to book and punished without delay and if he is innocent then the cloud of accusation should be removed as speedily as circumstances permit." *State v. Parker,* supra, 656. This central principle suffers, however, when criminal prosecutions become the locus of litigious sideshows involving parties and issues unrelated to the accused's guilt or innocence. The presence of The Hartford Courant in the middle of this prosecution is an aberation that places this case outside the usual definition of what we consider criminal litigation. See id., 653.

Yet, the majority fails even to note that the defendant is opposed in this "criminal" appeal not by the prosecuting authority but by a newspaper, or that the principal issues at stake are not the fairness of the adjudication of the defendant's guilt or innocence, but whether the Courant has the right to intervene in this case and whether the court's order unsealing the documents was erroneous. Whatever this litigation may be, it certainly *cannot* be considered a traditional criminal appeal. Therefore, the majority's analysis concerning our jurisdiction over criminal appeals from nonfinal judgments; *In re Juvenile Appeal (85-AB),* 195 Conn. 303, 312, 488 A.2d 778 (1985) (transfer of case from juvenile to regular criminal docket not final judgment); *State v. Longo,* 192 Conn. 85, 90–91, 469 A.2d 1220 (1984) (denial of an application for youthful offender status not final judgment); *State v. Spendolini,* 189 Conn. 92, 97, 454 A.2d 720 (1983) (denial of accelerated rehabilitation not final judgment); *State v. Lloyd,* 185 Conn. 199, 207, 440 A.2d 867 (1981) (entry of nolle prosquei, or denial of a speedy trial claim not final judgments); is inapposite to the case before us. The defendant has brought a civil claim to this court and is opposed by a civil litigant. The relevance of the aforementioned criminal cases is limited, at best.

Even if the defendant's appeal is not considered a purely criminal appeal, it must be taken from a final judgment or from an interlocutory judgment that, under *State* v. *Curcio, supra,* is deemed final. The majority found the defendant's claim wanting under both prongs of the *Curcio* test. I find, however, that the defendant has amply satisfied the first prong of the test.

When an order or action of the trial court terminates a separate and distinct proceeding, the order is an appealable final judgment. Id., 31. Contrary to the majority's view, the court's ruling unsealing this police report terminated a separate and distinct proceeding. As discussed above, the order from which the defendant appeals was the result of litigation between the defendant and a newspaper, over an issue unrelated to the merits of the state's case. It had nothing to do with the defendant's prosecution for murder. The defendant had the right to oppose the intrusion of uninterested third parties into this prosecution, and in no way can the issue of the paper's presence in this litigation be viewed as "part and parcel" of the prosecution.

The majority, quoting *State* v. *Curcio, supra,* finds the ruling at issue to be "merely a step along the road to final judgment" and, therefore, not a separate and distinct proceeding. Such a "step," presumably, would affect certain contingencies further down the line, if it were in fact "part and parcel" of the prosecution. An order suppressing evidence, for instance, limits the evidence the state may later produce at trial. The majority itself notes, however, that "the prosecution will continue *regardless of the release or continued sealing of the police report.*" (Emphasis added.)

Indeed, the majority's conclusion, that the proceeding involving the unsealing of the police report will not

affect the progress of the prosecution, flies in the face of its holding, "as a matter of law," that "a proceeding involving the police report, which was sufficient for the arraigning court to hold the defendant for trial," must be deemed to have an impact on the prosecution. This conflict reflects the majority's confusion of the police report, which certainly is central to the defendant's prosecution, with a *proceeding involving the police report,* which, as we have seen, is unrelated to the continued progress of the prosecution.[2] The only "party" to this prosecution affected by the court's decision on this matter was the newspaper; the defendant, the state and the court already have free access to the document.[3]

The defendant has appealed from an order terminating a separate and distinct proceeding. *State* v. *Curcio,* supra. He is thus entitled to review of the merits of his appeal, to which I turn next.

## II

There is a presumption of public access to a criminal trial; *Richmond Newspapers, Inc.* v. *Virginia,* 448 U.S. 555, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980); and to

---

[2] Nothing more clearly illustrates the total absence of any connection between the progress of this appeal and the progress of the larger prosecution than the fact that, during the pendency of this appeal, the prosecution continued in the trial court and the state and the defendant have reached a plea agreement. Thus, it cannot be said in this case that " 'the result of review [was] "to halt the orderly progress of a cause [in order to] consider incidentally a question which has happened to cross the path of such litigation . . . .' [*Cobbledick* v. *United States,* 309 U.S. 323, 326, 60 S. Ct. 540, 84 L. Ed. 2d 783 (1940).]" *State* v. *Parker,* 194 Conn. 650, 655, 485 A.2d 1139 (1984).

[3] I note at this point that, contrary to the Courant's assertion, the fact that the unsealing of the police report will cause the defendant to suffer no legally cognizable harm does not deprive the defendant of standing to bring this appeal. Although the defendant may not be aggrieved by the court's decision to unseal the report, he is certainly aggrieved by the court's decision to allow the newspaper to intervene in the prosecution in the first place.

a pretrial proceeding in a criminal case. See *Press-Enterprise Co.* v. *Superior Court,* 478 U.S. 1, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986). These rights are grounded in the first amendment to the United States constitution; U.S. Const., art. I; and are qualified by due consideration regarding the effect of pretrial publicity on the right of the accused to a fair trial. *Globe Newspaper Co.* v. *Superior Court,* 457 U.S. 596, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982). The presumption of access also applies to documents filed in connection with criminal proceedings. *United States* v. *Suarez,* 880 F.2d 626, 630 (2d Cir. 1989); *In re The New York Times Co.,* 828 F.2d 110 (2d Cir. 1987), cert. denied, 485 U.S. 977, 108 S. Ct. 1272, 99 L. Ed. 2d 483 (1988). The Courant, then, is entitled, as a matter of federal constitutional law, to seek the vindication of that right through the unsealing of the police report. Accordingly, I do not question the Courant's "right to be heard"; *Gannett Co.* v. *DePasquale,* 443 U.S. 368, 392, 99 S. Ct. 2898, 61 L. Ed. 2d 608 (1979); on the sealing of the police report. I am deeply troubled, however, by the Courant's intervention into a criminal prosecution, even if the purpose is to vindicate its first amendment right of access to the police report.

It is my view that the Courant's right to be heard is not abridged or burdened by requiring the paper to vindicate that right in a separate, civil action. The Courant has brought no case to our attention that holds that the paper is entitled, either as a matter of constitutional law or otherwise, to intervene in a criminal prosecution in order to air its first amendment claims.[4] To my knowledge, such a case does not exist.

---

[4] In several of the federal cases cited by the Courant, the newspaper was allowed to intervene. See, e.g., *Richmond Newspapers, Inc.* v. *Virginia,* 448 U.S. 555, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980); *United States* v. *Suarez,* 880 F.2d 626 (2d Cir. 1989); *United States* v. *Gerena,* 703 F. Sup. 211 (D. Conn. 1988). In none of these cases, however, was intervention held, or even suggested, to be the procedural course preferred by the court, let alone

The Courant, moreover, has failed to provide any basis in Connecticut law or practice for its intervention into a criminal prosecution. Although the rules of practice provide for intervention in civil cases both as of right; Practice Book § 99; and permissively; Practice Book § 100; *Horton* v. *Meskill,* 187 Conn. 187, 191–99, 445 A.2d 579 (1982); these sections do not apply to criminal cases. See *State* v. *Gallagher,* 72 Conn. 604, 606, 45 A. 430 (1900). Criminal procedure in Connecticut is governed by a separate and distinct set of carefully drawn rules. See Practice Book §§ 592 through 1022. Of the 357 separate rules of criminal procedure in the Practice Book, none authorizes the intervention of third parties into criminal prosecutions. This court recently declined to graft a rule of civil procedure onto the criminal rules; *State* v. *Smith,* 19 Conn. App. 646, 563 A.2d 1064 (1989); and I would likewise hesitate to do so here.

Although it is true that the rule making power governing practice and procedure in the Superior Court is vested in the judges of that court, this does not mean that one judge can change or modify the rules depending on the exigencies of the particular case before him. *Fattibene* v. *Kealey,* 18 Conn. App. 344, 356, 558 A.2d 677 (1989). I agree with the analysis of the Colorado Supreme Court in *People* v. *Ham,* 734 P.2d 623, 625 (Colo. 1987), that "[t]he concept of intervention proceeds from the principle that the efficient resolution of a civil controversy often requires the addition of other persons whose interests might be jeopardized by the resolution of the controversy between the original

the exclusive procedural course. In these cases, the newspaper's intervention was not challenged and was, therefore, not an issue before the court. The procedural history of any of these cases is of no precedential value unless it was relevant to the court's holding. Moreover, that a mode of procedure is accepted or even required in federal courts does not mean that such a procedure may be adopted by individual judges of the Superior Court. *Fattibene* v. *Kealey,* 18 Conn. App. 344, 356, 558 A.2d 677 (1989).

parties. The considerations underlying nonparty intervention in a civil case, however, are not applicable to a criminal case." The *Ham* court went on to hold that the Colorado rules of practice "relating to intervention in a pending civil controversy were neither designed for nor should be applied to a criminal case." Id., 626; see also *Central South Carolina Chapter, Society of Professional Journalists* v. *United States District Court,* 551 F.2d 559, 563 (4th Cir. 1977); *Gannet Pacific Corporation* v. *Richardson,* 59 Haw. 224, 580 P.2d 49 (1978); *State* v. *Simants,* 194 Neb. 783, 236 N.W.2d 794 (1975), rev'd on other grounds sub nom. *Nebraska Press Assn.* v. *Stuart,* 427 U.S. 539, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976); *State* v. *Cianci,* 496 A.2d 139, 145–46 (R.I. 1985); *State* v. *Bianchi,* 92 Wash. 2d 91, 593 P.2d 1330 (1979) (en banc).

I am even less inclined to torture both our rules of civil and criminal procedure by seeking to transplant a clone of one within the bosom of the other in light of the fact that other procedural tools already exist that would afford the interested persons a fuller and, presumably, fairer hearing without interfering with the defendant's prosecution.[5] I agree with the analysis of the Rhode Island Supreme Court in *State* v. *Cianci,* supra, that "in future cases of this nature, the better

[5] Another procedural remedy, although not exactly on all fours, is also worthy of comment. General Statutes § 51-164x (which is identical to Practice Book § 2022) permits "[a]ny person affected by a court order which prohibits any person from attending any session of court . . . whether at pretrial or trial stage," to appeal such order by filing a motion for review in the Appellate Court. As discussed above, the presumption of constitutionally guaranteed public access to criminal trials has been held to apply to documents filed in connection with criminal proceedings. *United States* v. *Suarez,* 880 F.2d 626 (2d Cir. 1989). Although it is probably beyond the scope of the rule to read Practice Book § 2022 so as to allow a motion for review of an order sealing all or part of the file in a criminal prosecution to be filed in this court in the same manner as a motion for review of a court closure order, this court may wish to consider modifying the rule so as to facilitate such review.

practice would be for representatives of the press or the public to institute a separate, independent action against the sealing authority by way of a complaint for declaratory judgment in the Superior Court. A hearing could then be held . . . and . . . a record . . . created for this court to review if the complaining party is still aggrieved. In this way the public's and the media's interests, which are collateral to the criminal proceeding, can be fully adjudicated without interfering with or interrupting the criminal proceeding in any way. A defendant's constitutional right to a fair trial should not be interrupted or sidetracked while collateral interests of third parties are adjudicated." Id., 146.

An action in the nature of a declaratory judgment is the most appropriate remedy for the adjudication of the rights of all the interested parties; see id.; especially in light of the fact that, while intervention might serve the interests of the press, it would not allow others interested in the sealing or unsealing to be heard. The press might, for instance, seek the unsealing of privileged mental health records; see *State* v. *Pierson,* 201 Conn. 211, 514 A.2d 724 (1986); sealed records of conversations between victim-witnesses and sexual assault counselors; see *In re Robert H.,* 199 Conn. 693, 509 A.2d 475 (1986); sealed records from the department of children and youth services; see *State* v. *Apostle,* 8 Conn. App. 216, 238, 512 A.2d 947 (1986); or sealed transcripts from trials that resulted in acquittal of the accused; see *State* v. *Douglas,* 10 Conn. App. 103, 522 A.2d 302 (1987). Although the confidentiality of all these records is protected in varying degree by statute; see, e.g., General Statutes §§ 52-146c–146j (psychiatric or psychological records); General Statutes § 52-146k (rape crisis center records); General Statutes § 17-47a (DCYS records); General Statutes § 54-142a (a) (erased trial transcripts); a motion to unseal these records, brought not by the defendant but

by an intervening newspaper, might not be opposed by the state with the same vigor that would be applied by the subject of the reports. Thus, it is preferable to locate the unsealing litigation in a forum wherein *all* concerned persons could have an adequate opportunity to be heard.

In sum, I would find error in the trial court's order granting the Courant's motion to intervene and in its subsequent order vacating the sealing order, and would vacate those orders and remand the case for further proceedings.

