# IN RE MICHAEL S.*
## (SC 16556)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

Argued September 25—officially released November 27, 2001

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

David T. Grudberg, with whom were Michael Sherman and Jason Throne, for the appellant (respondent).

Susann E. Gill, senior assistant state's attorney, with whom was Jonathan C. Benedict, state's attorney, for the appellee (state).

Opinion

SULLIVAN, C. J. The dispositive issue in this appeal is whether an order transferring jurisdiction from the juvenile matters division of the trial court to the regular criminal docket of the Superior Court is an appealable final judgment. We conclude that it is not. Accordingly, we dismiss the appeal.

The record reveals the following relevant facts and procedural history. On January 19, 2000, the respondent, Michael S., was arrested and charged with the October 30, 1975 murder of Martha Moxley. The respondent, who was thirty-nine years old at the time of his arrest, had been fifteen years old at the time of the alleged murder. Because the respondent had been a juvenile at the time of the alleged murder, he was charged as a delinquent in the juvenile matters division of the trial court.

Pursuant to General Statutes (Rev. to 1975) § 17-60a,[1] the state requested that the respondent be transferred

---

[1] General Statutes (Rev. to 1975) § 17-60a provides: "The juvenile court shall have the authority to transfer to the jurisdiction of the superior court any child referred to it for the commission of a murder, provided any such murder was committed after such child attained the age of fourteen years. No such transfer shall be valid unless prior thereto the court has caused a complete investigation to be made as provided in section 17-66 and has found, after a hearing, that there is reasonable cause to believe that (1) the child has committed the act for which he is charged and (2) there is no state institution designed for the care and treatment of children to which said court may commit such child which is suitable for his care or treatment

to the regular criminal docket of the trial court. That statute provides that the juvenile matters division may transfer to the jurisdiction of the regular criminal docket of the Superior Court a child referred to it for the commission of murder, provided that it "has found, after a hearing, that there is reasonable cause to believe that (1) the child has committed the act for which he is charged and (2) there is no state institution designed for the care and treatment of children to which said court may commit such child which is suitable for his care or treatment or (3) the safety of the community requires that the child continue under restraint for a period extending beyond his majority and (4) the facilities of the superior court provide a more effective setting for disposition of the case and the institutions to which said court may sentence a defendant are more suitable for the care or treatment of such child." General Statutes (Rev. to 1975) § 17-60a.

On June 20, 21 and 28, 2000, the juvenile matters division held a probable cause hearing limited to the issues of establishing the respondent's age and whether there was probable cause to believe that he had committed the murder. On August 17, 2000, the court issued its decision, concluding that there was probable cause. It also ordered an investigation by the probation office pursuant to General Statutes (Rev. to 1975) § 17-66.[2]

or (3) the safety of the community requires that the child continue under restraint for a period extending beyond his majority and (4) the facilities of the superior court provide a more effective setting for disposition of the case and the institutions to which said court may sentence a defendant are more suitable for the care or treatment of such child." Unless otherwise specified, all references in this opinion to § 17-60a are to that statute as revised to 1975.

[2] General Statutes (Rev. to 1975) § 17-66 provides: "Prior to the disposition of the case of any child found to be delinquent, investigation shall be made of the facts as herein specified by the probation officer, and until such investigation has been completed and the results thereof placed before the judge, no disposition of the child's case shall be made. Such investigation shall consist of an examination of the parentage and surroundings of the child, his age, habits, and history, and shall include also an inquiry into the

On June 28 and October 20, 2000, the juvenile matters division held another hearing pursuant to § 17-60a, at which it heard evidence and arguments concerning (1) the second, third and fourth factors set forth in that statute and (2) the probation department's investigation pursuant to § 17-66. The court issued its memorandum of decision on January 31, 2001, concluding that "there is no available or suitable state institution designed for the care and treatment of children to which the Juvenile Court could commit, the now forty year old, respondent that would be suitable for his care and treatment, should he be adjudicated delinquent for the murder of the victim." Accordingly, the court ordered the respondent to be transferred to the jurisdiction of the regular criminal docket of the trial court.

The respondent thereafter appealed from the order of the juvenile matters division of the trial court to the Appellate Court. The state moved to dismiss the appeal for lack of a final judgment. The Appellate Court denied that motion without prejudice and ordered the parties to address in their briefs whether the transfer order of the juvenile division of the trial court was a final judgment. Thereafter, we granted the parties' joint motion to transfer the case to this court.

The respondent claims on appeal that: (1) pursuant to Public Acts 1986, No. 86-185, § 2 (P.A. 86-185),[3] he

---

home conditions, habits and character of his parents or guardians. Where a child is or legally should be in attendance at school, it shall further contain a report of the child's school adjustment, which shall be furnished by the school officials to the court upon its request. The court shall, when it is found necessary to the disposition, cause a complete physical or mental examination, or both, to be made of the child by persons professionally qualified to do so." Unless otherwise specified, all references in this opinion to § 17-66 are to that statute as revised to 1975.

[3] Public Acts 1986, No. 86-185, § 2, amended General Statutes (Rev. to 1985) § 46b-127 by adding a provision that "[a]n order by the court under this section transferring a child from the docket for juvenile matters to the regular criminal docket of the superior court shall be a final judgment for purposes of appeal."

has a statutory right to appeal the transfer order; and (2) the juvenile matters division improperly found that the statutory criteria for transfer had been met. We conclude that the transfer order was not an appealable final judgment. Accordingly, we do not reach the respondent's second claim.

It is well established that "[t]he right of appeal exists only by virtue of statutory authority. *In re Judicial Inquiry No. 85–01*, 221 Conn. 625, 633, 605 A.2d 545 (1992), citing *State* v. *Audet*, 170 Conn. 337, 342, 365 A.2d 1082 (1976). Generally, appellate courts in this state do not have jurisdiction to entertain appeals not taken from final judgments. See General Statutes § 52-263; *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983). The lack of a final judgment is a jurisdictional defect that mandates dismissal. *Connecticut National Bank* v. *Rytman*, 241 Conn. 24, 34, 694 A.2d 1246 (1997). A judgment is considered final if the rights of the parties are concluded so that further proceedings cannot affect them . . . . *Goodson* v. *State*, 228 Conn. 106, 112, 635 A.2d 285 (1993), on appeal after remand, 232 Conn. 175, 653 A.2d 177 (1995), quoting *Monroe* v. *Monroe*, 177 Conn. 173, 176, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979)." (Internal quotation marks omitted.) *Stern* v. *Allied Van Lines, Inc.*, 246 Conn. 170, 174, 717 A.2d 195 (1998).

The appeal provisions for juvenile proceedings are set forth at General Statutes § 46b-142 (b).[4] That statute

---

[1] General Statutes § 46b-142 (b) provides: "The Department of Children and Families, or any party at interest aggrieved by any final judgment or order of the court, may appeal to the Appellate Court in accordance with the provisions of section 52-263. The clerk in charge of such juvenile matters shall forthwith, after notice of any appeal, prepare and file with the clerk of the Appellate Court the certified copy of the record of the case from which such appeal has been taken. The name of the child or youth involved in any such appeal shall not appear on the record of the appeal, and the records and papers of any juvenile case filed in the Appellate Court shall be open for inspection only to persons having a proper interest therein and upon order of the court."

provides in relevant part that "[t]he Department of Children and Families, or any party at interest aggrieved by any final judgment or order of the court, may appeal to the Appellate Court in accordance with the provisions of section 52-263."

In *In re Juvenile Appeal (85–AB)*, 195 Conn. 303, 488 A.2d 778 (1985), this court considered whether an order of the juvenile matters division transferring the case to the regular criminal docket pursuant to General Statutes (Rev. to 1981) § 46b-126[5] was a final judgment for the purposes of appeal. We first noted that, in a criminal case, the final judgment is ordinarily the imposition of sentence, which had not yet occurred. Id., 307. We then concluded that a transfer order did not fall into either of the exceptions to the requirement for a final judgment set forth in *State* v. *Curcio*, supra, 191 Conn. 31.[6] *In re Juvenile Appeal (85–AB)*, supra, 307, 314. Accordingly, we concluded that the transfer order was not a final judgment. Id., 306. Two justices dissented. Id., 314 (*Healey, J.*, dissenting); id., 319 (*Parskey, J.*, dissenting).

In the year following this court's decision in *In re Juvenile Appeal (85–AB)*, supra, 195 Conn. 303, the

---

This statute has been amended several times since the date of the alleged murder in 1975. The retroactivity of the current version of the statute is not at issue in this appeal, and the parties have proceeded under that version.

[5] General Statutes (Rev. to 1981) § 46b-126 provides in relevant part: "(a) The court shall hold a transfer hearing to determine whether it is appropriate to transfer and may transfer from the docket for juvenile matters to the regular criminal docket of the superior court any child referred for the commission of a class A felony, or for any serious juvenile offense if such child has previously been adjudicated a delinquent for a serious juvenile offense, provided such child has attained the age of fourteen at the time the alleged delinquent act was committed. . . ."

[6] Under *Curcio*, "[a]n otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, supra, 191 Conn. 31.

legislature amended General Statutes (Rev. to 1985) §§ 46b-126[7] and 46b-127.[8] The amendment added to both statutes a provision that "[a]n order by the court under this section transferring a child from the docket for juvenile matters to the regular criminal docket of the superior court shall be a final judgment for purposes of appeal." P.A. 86-185, §§ 1 and 2. Thereafter, that language was deleted from § 46b-127 by statutory amendment. See Public Acts, Spec. Sess., July, 1994, No. 94-2, § 6 (Spec. Sess. P.A. 94-2, § 6).[9]

The respondent argues that P.A. 86-185, § 2, was enacted in response to this court's decision in *In re Juvenile Appeal (85–AB)*, supra, 195 Conn. 303, and was intended to clarify the original intent of General Statutes (Rev. to 1985) § 46b-127. He contends that P.A. 86-185, § 2, therefore, should be applied retroactively to him. See *Edelstein* v. *Dept. of Public Health & Addiction Services*, 240 Conn. 658, 667–70, 692 A.2d 803 (1997) (legislation that is intended to clarify existing law, rather than create new law, is applied retroactively). We disagree.

"In determining the effect of a subsequent statutory amendment on earlier legislation, we are guided by well defined principles of statutory interpretation. We recognize the usual presumption that, in enacting a statute, the legislature intended a change in existing law. . . . This presumption, however, like any other, may be rebutted by contrary evidence of the legislative intent in the particular case. . . . In determining the

[7] General Statutes (Rev. to 1985) § 46b-126 governs the transfer of a child charged with a class A felony or serious juvenile offense to the regular criminal docket.

[8] General Statutes (Rev. to 1985) § 46b-127 governs the transfer of a child charged with murder or repeated felonies to the regular criminal docket.

[9] The final judgment language continued to be included in § 46b-126 until the transfer provision was deleted from that statute in 1995. See Public Acts 1995, No. 95-225, § 39.

intended effect of a later enactment on earlier legislation, two questions must be asked. First, was the act intended to clarify existing law or to change it? Second, if the act was intended to make a change, was the change intended to operate retroactively?" (Internal quotation marks omitted.) Id., 667. "To determine whether an act should be characterized as clarifying legislation, we look to the legislative history to determine the legislative intent." (Internal quotation marks omitted.) Id., 668.

We agree with the respondent that P.A. 86-185, § 2, was enacted in response to our decision in *In re Juvenile Appeal (85–AB)*, supra, 195 Conn. 303. In a hearing on the proposed legislation before the judiciary committee, Raphael Podolsky of the Center for Advocacy and Research testified that the legislation addressed a "problem [that] arises from a recent [S]upreme [C]ourt case in 1985 that says you can't take an appeal if the [S]uperior [C]ourt . . . moves a child . . . from the juvenile docket to the regular docket." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1986 Sess., pp. 826–27. He further testified that "the reason that [the transfer order] needs to be appealable earlier is because what you lose is . . . the confidentiality of the juvenile court system and you lose the right to have children segregated from adults. So that if you can't take the appeal at that point, that appeal will forever be lost. It was a 3 to 2 decision of the [S]upreme [C]ourt interpreting the existing statute. This Bill, in effect, adopts the opinion of the two rather than the opinion of the three." Id., p. 827, remarks of Podolsky. "It is now well settled that testimony before legislative committees may be considered in determining the particular problem or issue that the legislature sought to address by the legislation. . . . This is because legislation is a purposive act . . . and, therefore, identifying the particular problem that the legislature sought to resolve

helps to identify the purpose or purposes for which the legislature used the language in question." (Internal quotation marks omitted.) *Dowling* v. *Slotnik*, 244 Conn. 781, 804, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998). We conclude, therefore, that P.A. 86-185, §§ 1 and 2, was intended to overrule our decision in *In re Juvenile Appeal (85–AB)*, supra, 303.

The fact that P.A. 86-185, § 2, was intended to overrule *In re Juvenile Appeal (85–AB)*, supra, 195 Conn. 303, however, "is insufficient to overcome the presumption against retroactive applicability; indeed, it sheds little, if any, light on whether the legislature intended for the amendment to be applied retroactively. The mere fact that the legislature changes the language of a statutory provision in response to a judicial decision interpreting that provision does not mean that the legislature necessarily intended that the amendatory language be retroactive." *Colonial Penn Ins. Co.* v. *Bryant*, 245 Conn. 710, 720, 714 A.2d 1209 (1998). In the cases wherein this court has held that a statutory amendment had been intended to be clarifying and, therefore, should be applied retroactively, the pertinent legislative history has provided "uncontroverted support . . . for the conclusion that the legislature considered the amendatory language to be a declaration of the legislature's *original* intent rather than a change in the existing statute." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 721. The legislative history of P.A. 86-185, § 2, contains no indication that the legislature enacted that provision to clarify, rather than to change, the existing law.[10]

---

[10] In support of his argument to the contrary, the respondent quotes our statement in *Edelstein* v. *Dept. of Public Health & Addiction Services*, supra, 240 Conn. 669, that "[i]f the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act." (Internal quotation marks omitted.) See id., citing *Reliance Ins. Co.* v. *American Casualty Co. of Reading, Pennsylvania*, 238 Conn. 285, 290, 679 A.2d 925

Furthermore, this court previously has held that the "provision for a direct appeal . . . where no such appeal previously existed, constitutes a substantive change in the law and is not [a] procedural change . . . ." *In re Judicial Inquiry No. 85–01*, supra, 221 Conn. 632. Ordinarily, "a statute which . . . brings about changes in substantive rights is not subject to retroactive application." *In re Daniel H.*, 237 Conn. 364, 373, 678 A.2d 462 (1996).

Finally, we note that the underlying substantive purposes of P.A. 86-185, § 2, were to protect the privacy of juveniles and to ensure that they were not incarcerated with adults during pretrial and trial proceedings. As the state points out, the only effect of retroactive application of the amendment would be to allow persons who, like the respondent, are charged with committing murder as juveniles before 1986 to appeal directly from transfer orders. None of those persons is now a juvenile. Retroactive application of the amendment, therefore, would entail all of the "delays and disruptions attendant upon intermediate appeals"; (internal quotation marks omitted) *In re Juvenile Appeal (85–AB)*, supra, 195 Conn. 309; without advancing the underlying purpose of the amendment.[11]

---

(1996), *State* v. *Blasko*, 202 Conn. 541, 558, 522 A.2d 753 (1987), and 1A J. Sutherland, Statutory Construction (5th Ed. Singer 1992) § 22.31, p. 279. In *Edelstein* and the cases cited therein, however, the legislative history of the amendment under review provided independent support for this court's conclusion that the amendment under review was intended to clarify, rather than to change, the law. To the extent that the language cited by the respondent suggests that the fact that an amendment occurred soon after a court's interpretation of the original act is, *in itself*, sufficient to show that the amendment was intended to be clarifying legislation, that suggestion was explicitly rejected in *Colonial Penn Ins. Co.* v. *Bryant*, supra, 245 Conn. 720, wherein we concluded that that fact was insufficient to overcome the presumption against retroactive application.

[11] We note that the problem presented by aging juveniles was recognized by the legislature when it enacted Spec. Sess. P.A. 94-2, § 6, deleting the final judgment language from § 46b-127. During debate on the proposed legislation, Senator George Jepsen stated that the ability to appeal from a transfer order "has been the focus of much of the problems associated with

Accordingly, we conclude that the transfer order in the present case was not an appealable final judgment.

The appeal is dismissed.

In this opinion the other justices concurred.

Juvenile Court actions because by the time an appeal is taken, the juvenile is no longer a juvenile." 37 S. Proc., Pt. 10, July 13, 1994, Spec. Sess., p. 3630. Representative Edward C. Graziani stated that "when you take an appeal [from a transfer order], you can extend the period of time before a resolution is done. The child is typically over 16 [by the time the appeal is decided], so the whole issue is moot. Therefore, the state's advocates do not proceed to try to even attempt under our existing law to get a transfer because the law is really defective. [Under t]his new law . . . there is no appeal. You cannot appeal, so you cannot stop the clock when the system goes forward, so the child doesn't become 16 before justice is followed through." 37 H.R. Proc., Pt. 27, July 13, 1994 Spec. Sess., p. 9955.

