******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## IN RE TYRIQ T.*
### (SC 19153)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.**

*Argued March 20—officially released August 19, 2014*

*Joshua Michtom*, assistant public defender, with whom was *Sharon Elias*, assistant public defender, for the appellant (respondent).

*Nancy L. Chupak*, senior assistant state's attorney, with whom were *Francis Carino*, supervisory assistant state's attorney, and, on the brief, *Maureen Platt*, state's attorney, and *John Davenport*, supervisory assistant state's attorney, for the appellee (state).

*Marsha L. Levick* and *Hannah Benton* filed a brief for the National Center for Youth Law et al. as amici curiae.

*Opinion*

ESPINOSA, J. In this certified appeal, we are called upon to decide whether a trial court's interlocutory order granting a motion seeking a discretionary transfer of a respondent's case from the docket for juvenile matters to the regular criminal docket of the Superior Court pursuant to General Statutes (Supp. 2014) § 46b-127 (b) (1)[1] is a final judgment for purposes of appeal. In the present case, the respondent, Tyriq T., appealed to the Appellate Court after his juvenile case was transferred to the regular criminal docket pursuant to § 46b-127 (b) (1). The Appellate Court dismissed the appeal for lack of a final judgment, and the respondent appealed to this court. We granted the respondent's petition for certification, limited to the following question: "Did the Appellate Court properly dismiss the [respondent's] appeal for lack of a final judgment?" *In re Tyriq T.*, 309 Conn. 904, 68 A.3d 659 (2013). We answer the question in the affirmative, concluding that the clear intent of the legislature is to prohibit interlocutory appeals from discretionary transfer orders. Accordingly, we affirm the judgment of the Appellate Court.

The record reveals the following relevant procedural background. The respondent, who was sixteen years old at the time of his arrest, was charged as a juvenile with carrying a pistol without a permit in violation of General Statutes (Rev. to 2011) § 29-35 (a), possession of a weapon in a motor vehicle in violation of General Statutes § 29-38, and theft of a firearm in violation of General Statutes § 53a-212. The state filed a motion to transfer his case to the regular criminal docket of the Superior Court at Waterbury and, pursuant to § 46b-127, the trial court held a hearing over two days. After making the requisite factual findings, the court granted the state's motion and ordered the respondent's case to be transferred to the regular criminal docket.

The respondent filed a timely appeal to the Appellate Court. Thereafter, the Appellate Court, sua sponte, ordered the parties to appear and argue whether the respondent's appeal should be dismissed due to the lack of a final judgment.[2] After a hearing, the court dismissed the respondent's appeal.[3] This certified appeal followed.

On appeal, the respondent argues that it is clear that the legislature did not intend to prohibit interlocutory appeals of discretionary transfer orders because § 46b-127 (b) is silent as to whether an interlocutory appeal can be taken from a discretionary transfer order. He maintains also that the genealogy of the discretionary transfer provision and language from a related provision in § 46b-127 that was added in 2010 support his position.[4] Public Acts, Spec. Sess., June, 2010, No. 10-1, § 30 (adding subsection [f] to General Statutes [Supp. 2010] § 46b-127). In response, the state argues that the intent

of the legislature to prohibit interlocutory appeals of discretionary transfer orders is evidenced by the deletion of the final judgment language from General Statutes (Rev. to 1993) § 46b-127. Public Acts, Spec. Sess., July, 1994, No. 94-2, § 6.

We agree with the state that the legislature expressed a clear intent to prohibit the immediate appeal of discretionary transfer orders. As we explain herein, although the current statutory text of § 46b-127 does not resolve the question of whether a discretionary transfer order constitutes a final judgment for purposes of appeal, we conclude, on the basis of the genealogy of the transfer provisions, read together with this court's interpretation of the legislative intent evident from the prior amendments to those provisions, that under the current statutory language a discretionary transfer order cannot be immediately appealed. This interpretation of the discretionary transfer provision results in a harmonious and consistent body of law with respect to all of the transfer provisions currently contained in § 46b-127.

It is well settled that this court has subject matter jurisdiction only over appeals from final judgments. *Abreu* v. *Leone*, 291 Conn. 332, 338, 968 A.2d 385 (2009). "The legislature may, however, deem otherwise interlocutory actions of the trial courts to be final judgments, as it has done by statute in limited circumstances. See, e.g., General Statutes § 31-118 (authorizing appeals from temporary injunctions in labor dispute); General Statutes § 52-278*l* (authorizing appeals from prejudgment remedies); see also W. Horton & K. Bartschi, [Connecticut Practice Series: Connecticut Rules of Appellate Procedure (2009 Ed.)], §§ 61-2 through 61-11." *Abreu* v. *Leone*, supra, 338. Because "[t]he right of appeal is purely statutory"; *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983); we must consider whether the legislature has deemed discretionary transfer orders final judgments.

Whether the legislature intended discretionary transfer orders issued pursuant to § 46b-127 (b) (1) to be final judgments for purposes of appeal presents a question of statutory interpretation over which we exercise plenary review. See *Ugrin* v. *Cheshire*, 307 Conn. 364, 379, 54 A.3d 532 (2012). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of

the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Kasica* v. *Columbia*, 309 Conn. 85, 93, 70 A.3d 1 (2013).

Consistent with these principles of statutory interpretation, we turn first to the language of the statute. The current version of § 46b-127 provides for three types of transfers of a case that charges a juvenile with an offense: (1) mandatory transfers from the docket for juvenile matters to the regular criminal docket of the Superior Court (mandatory transfer provision); General Statutes (Supp. 2014) § 46b-127 (a);[5] (2) discretionary transfers from the docket for juvenile matters to the regular criminal docket of the Superior Court (discretionary transfer provision); General Statutes (Supp. 2014) § 46b-127 (b); and (3) transfers of cases of youths age sixteen or seventeen from the youthful offender docket, regular criminal docket of the Superior Court or any docket for the presentment of defendants in motor vehicle matters, to the docket for juvenile matters (youthful offender transfer provision). General Statutes (Supp. 2014) § 46b-127 (f).[6]

The transfer provision at issue in the present case, the discretionary transfer provision, provides: "Upon motion of a prosecutorial official, the superior court for juvenile matters shall conduct a hearing to determine whether the case of any child charged with the commission of a class C, D or E felony or an unclassified felony shall be transferred from the docket for juvenile matters to the regular criminal docket of the Superior Court. The court shall not order that the case be transferred under this subdivision unless the court finds that (A) such offense was committed after such child attained the age of fourteen years, (B) there is probable cause to believe the child has committed the act for which the child is charged, and (C) the best interests of the child and the public will not be served by maintaining the case in the superior court for juvenile matters. In making such findings, the court shall consider (i) any prior criminal or juvenile offenses committed by the child, (ii) the seriousness of such offenses, (iii) any evidence that the child has intellectual disability or mental illness, and (iv) the availability of services in the docket for juvenile matters that can serve the child's needs. Any motion under this subdivision shall be made, and any hearing under this subdivision shall be held, not later than thirty days after the child is arraigned in the superior court for juvenile matters." General Statutes (Supp. 2014) § 46b-127 (b) (1).

In the current version of the statute, both the discre-

tionary transfer and mandatory transfer provisions are silent as to whether those transfers are final judgments for purposes of appeal. Thus, one reasonably could conclude that the legislature did not intend to allow interlocutory appeals of discretionary transfers. See *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 618, 72 A.3d 394 (2013) ("it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" [citation omitted; internal quotation marks omitted]). In contrast, the youthful offender transfer provision explicitly provides that a transfer pursuant to that subsection is not a final judgment for purposes of appeal. General Statutes (Supp. 2014) § 46b-127 (f). Thus, solely on the basis of the statutory text, one also could conclude that the legislature did not intend to prohibit interlocutory appeals of discretionary transfer orders because it did not state so explicitly, as it did in the youthful offender transfer provision. See *M. DeMatteo Construction Co.* v. *New London*, 236 Conn. 710, 717, 674 A.2d 845 (1996) (omission of language in one provision of statute that is included in provision of statute of similar subject matter suggests different legislative intent). Because the statutory text is susceptible to two reasonable interpretations, and does not definitively resolve the interpretation issue presented, we turn our attention to extratextual sources. See *State* v. *Heredia*, 310 Conn. 742, 759, 81 A.3d 1163 (2013).

The legislature's intent to prohibit interlocutory appeals of discretionary transfer orders is evident after examining the genealogy of the transfer provisions, as well as the case law that has interpreted the previous revisions of those provisions. Section 46b-127 did not always contain three transfer provisions. In 1979, the legislature amended the transfer provisions, so that the mandatory transfer provision was set forth in § 46b-127;[7] see General Statutes (Rev. to 1981) § 46b-127;[8] and the discretionary transfer provision was set forth in § 46b-126 (a).[9] See General Statutes (Rev. to 1981) § 46b-126 (a).[10] The youthful offender transfer provision had not yet been enacted. At that time, both the discretionary and mandatory transfer statutes were silent as to whether those transfer orders were final judgments for purposes of appeal. From 1979 until 1985, the statutes were amended several times, but none of the changes addressed whether those transfer orders were final judgments for purposes of appeal.[11]

In 1985, this court concluded in *In re Juvenile Appeal (85–AB)*, 195 Conn. 303, 306, 488 A.2d 778 (1985), that discretionary transfer orders pursuant to General Statutes (Rev. to 1981) § 46b-126 (a) were not final judgments for purposes of appeal. See footnote 10 of this opinion. Relying on *State* v. *Curcio*, supra, 191 Conn. 27, this court concluded that it did not have jurisdiction to consider the transfer order because it did not satisfy

the second prong of *Curcio*, namely that the order did not so conclude the rights of the parties that further proceedings could not affect them. *In re Juvenile Appeal (85–AB)*, supra, 307–14. Thus, the court concluded that the discretionary transfer order was not a final judgment. Id., 306. The court rejected the defendant's contention that the confidentiality of juvenile proceedings could not be restored and that incarceration of a juvenile in an adult prison while awaiting trial or pending appeal may result in irreparable harm. Id., 307–308, 312–13. The court noted that "[t]he practical considerations which have led us to dismiss interlocutory appeals from the denial of applications for youthful offender treatment [in *State* v. *Longo*, 192 Conn. 85, 90, 469 A.2d 1220 (1984)] apply with virtually equal force to the transfer of [the] defendant from the juvenile division to the regular criminal session of the Superior Court." *In re Juvenile Appeal (AB–85)*, supra, 312. Thus, the court was not "persuaded that the potential for harm to juvenile offenders from erroneous transfer orders is so much greater in kind or degree than that which a seventeen year old, improperly denied the benefits of youthful offender treatment, may suffer in awaiting redress on appeal from a final judgment that a different conclusion from that reached in *State* v. *Longo*, supra, [90] as to the availability of an interlocutory appeal is warranted." *In re Juvenile Appeal (85–AB)*, supra, 313.

In 1986, in response to this court's decision in *In re Juvenile Appeal (AB–85)*, the legislature amended both the discretionary and mandatory transfer statutes by inserting the following language into both §§ 46b-126 and 46b-127: "An order by the court under this section transferring a child from the docket for juvenile matters to the regular criminal docket of the superior court shall be a final judgment for purposes of appeal."[12] The inclusion of such language expressed a clear legislative intent to permit interlocutory appeals of those transfer orders. See *Abreu* v. *Leone*, supra, 291 Conn. 338.

The legislature made mostly identical changes to the discretionary and mandatory transfer statutes between 1989 and 1993,[13] but in 1994, the legislature amended only the mandatory transfer statute, § 46b-127, removing the final judgment language from that provision.[14] Because § 46b-126 was not amended at that time, the final judgment language remained in the discretionary transfer statute.

In *In re Daniel H.*, 237 Conn. 364, 366–67, 678 A.2d 462 (1996), although the issue was whether the 1994 amendment applied retroactively to the respondents, this court was required to interpret the changes made by the 1994 amendment. In doing so, the court concluded that the amendment "eliminated the right to an immediate appeal from a court order transferring a juvenile matter to the regular criminal docket . . . ."

Id., 367. Thus, the court decided that the 1994 amendment deleting the final judgment language from § 46b-127 was a "postponement of the respondents' right to appeal, until after a final judgment had been rendered . . . ." Id., 375–76; see also *In re Michael S.*, 258 Conn. 621, 630–31 n.11, 784 A.2d 317 (2001) (This court observed that during the debate on the amendment that deleted the final judgment language from the mandatory transfer provision, "Senator George Jepsen stated that the ability to appeal from a transfer order 'has been the focus of much of the problems associated with Juvenile Court actions because by the time an appeal is taken, the juvenile is no longer a juvenile.' . . . Representative Edward C. Graziani stated that 'when you take an appeal [from a transfer order], you can extend the period of time before a resolution is done. The child is typically over [sixteen years old by the time the appeal is decided], so the whole issue is moot. Therefore, the state's advocates do not proceed to try to even attempt under our existing law to get a transfer because the law is really defective. [Under t]his new law . . . there is no appeal. You cannot appeal, so you cannot stop the clock when the system goes forward, so the child doesn't become [sixteen] before justice is followed through.' " [Citation omitted.]).[15]

The legislature again addressed the issue of the finality of discretionary transfer orders in 1995, one year after removing the final judgment language from the mandatory transfer statute, when it reorganized the juvenile justice statutes. As part of the reorganization, the legislature moved the discretionary transfer provision from § 46b-126 (a) to § 46b-127 (b).[16] When the discretionary transfer provision was moved to § 46b-127 (b), the final judgment language was omitted from the new statutory provision.[17] From 1995, when the discretionary transfer provision was integrated into § 46b-127, until 2009, no amendments added final judgment language to the discretionary or mandatory transfer provisions.[18] Although the 2010 amendment added the youthful offender transfer provision, and its language prohibiting interlocutory appeals of those transfers,[19] none of the changes to § 46b-127 since the addition of the youthful offender transfer provision has affected our interpretation of the deletion of the final judgment language from the mandatory transfer provision.[20]

In light of the genealogy of the transfer provisions, therefore, it is clear that the intent of the legislature is to prohibit an immediate appeal of a discretionary transfer order. After this court's decision in *In re Juvenile Appeal (AB–85)*, the legislature inserted and subsequently deleted express language dictating that mandatory and discretionary transfer orders of cases from the docket for juvenile matters to the regular criminal docket are final judgments for purposes of appeal. After this court decided *In re Daniel H.* in 1996, and

the discretionary transfer provision was incorporated into § 46b-127, the legislature amended § 46b-127 more than ten times.[21] Significantly, none of those amendments sought to legislatively overrule this court's conclusion regarding the effect of the deletion of the final judgment language from the mandatory transfer provision. "Although we are aware that legislative inaction is not necessarily legislative affirmation . . . we also presume that the legislature is aware of [this court's] interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation." (Internal quotation marks omitted.) *Caciopoli* v. *Lebowitz*, 309 Conn. 62, 78, 68 A.3d 1150 (2013). By choosing not to legislatively overrule *In re Daniel H.*, the legislature has acquiesced to this court's interpretation that the deletion of the final judgment language from the mandatory transfer provision was the elimination of the right to an immediate appeal.

We see no reason why this court's conclusion in *In re Daniel H.* regarding the mandatory transfer provision should not apply equally to the deletion of the final judgment language from the discretionary transfer provision. When the discretionary and mandatory transfer provisions were located in separate statutes, the legislature frequently amended both statutes at the same time. Moreover, from 1986, when the legislature added the final judgment language, until 1995, when the mandatory and discretionary transfer provisions were integrated into one statute, four of the six amendments made identical changes to the statutes. These legislative actions support our conclusion that the legislature intended these similar provisions to be treated similarly. Thus, in accordance with the holding in *In re Daniel H.*, supra, 237 Conn. 367, we conclude that when the legislature eliminated the final judgment language from the discretionary transfer provision in P.A. 95-225, it "eliminated the right to an immediate appeal from a court order transferring a juvenile matter to the regular criminal docket . . . ." Id.

Our conclusion that the legislature intended to prohibit interlocutory appeals of discretionary transfer provisions, furthermore, is grounded in our presumption that the legislature intended to create a harmonious and coherent body of law. It is a well settled principle that "the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Renaissance Management Co.* v. *Connecticut Housing Finance Authority*, 281 Conn. 227, 238–39, 915 A.2d 290 (2007). Our conclusion regarding the right to interlocutory appeals

of discretionary transfer orders is consistent not only with our interpretation of the mandatory transfer provision but also with the language regarding final judgments from the youthful offender transfer provision, thus, rendering the statutory scheme both logical and coherent. When the legislature added the youthful offender transfer provision to § 46b-127 in 2010,[22] it did so fourteen years after this court had interpreted the effect of the deletion of the final judgment language from the mandatory transfer provision. See *In re Daniel H.*, supra, 237 Conn. 364. Because the youthful offender transfer provision codified a new type of transfer procedure, and in order to assure consistency with our interpretation regarding the availability of interlocutory appeals of mandatory transfer orders, it is reasonable that the legislature would include express language prohibiting the interlocutory appeal of transfer orders to the docket for juvenile matters. See *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 404, 999 A.2d 682 (2010) ("the legislature, in amending or enacting statutes, always [is] presumed to have created a harmonious and consistent body of law" [internal quotation marks omitted]). By clearly expressing its intent to prohibit interlocutory appeals of youthful offender transfers, the legislature ensured a consistent interpretation of all of the transfer provisions in § 46b-127.

When viewed in relation to the genealogy of the transfer provisions, the legislature's intent is clear: a transfer order made pursuant to the discretionary transfer provision in § 46b-127 (b) (1) is not a final judgment for purposes of appeal. The failure to legislatively overrule this court's decision in *In re Daniel H.*, analyzed in conjunction with the unequivocal language prohibiting interlocutory appeals of youthful offender transfer orders, only confirms our determination that when the legislature removed the final judgment language from the discretionary transfer provision, it intended to prohibit interlocutory appeals of discretionary transfer orders. To come to an opposite conclusion would lead to an incoherent construction of the statutory scheme.

The judgment of the Appellate Court is affirmed.

In this opinion ROGERS, C. J., and PALMER, ZARELLA and McDONALD, Js., concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson. Although Justice Palmer was not present when the case was argued before the court, he has read the record and briefs and listened to a recording of the oral argument prior to participating in this decision.

[1] General Statutes (Supp. 2014) § 46b-127 (b) (1) provides: "Upon motion of a prosecutorial official, the superior court for juvenile matters shall conduct a hearing to determine whether the case of any child charged with the commission of a class C, D or E felony or an unclassified felony shall

be transferred from the docket for juvenile matters to the regular criminal docket of the Superior Court. The court shall not order that the case be transferred under this subdivision unless the court finds that (A) such offense was committed after such child attained the age of fourteen years, (B) there is probable cause to believe the child has committed the act for which the child is charged, and (C) the best interests of the child and the public will not be served by maintaining the case in the superior court for juvenile matters. In making such findings, the court shall consider (i) any prior criminal or juvenile offenses committed by the child, (ii) the seriousness of such offenses, (iii) any evidence that the child has intellectual disability or mental illness, and (iv) the availability of services in the docket for juvenile matters that can serve the child's needs. Any motion under this subdivision shall be made, and any hearing under this subdivision shall be held, not later than thirty days after the child is arraigned in the superior court for juvenile matters."

Although § 46b-127 was amended after the respondent was transferred; see Public Acts 2013, No. 13-258, § 5; the amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute codified in the 2014 supplement.

[2] The Appellate Court ordered: "In the following matter, counsel are ordered to appear and give reasons, if any, why the respondent's appeal from the order granting the state's motion to transfer the respondent's case from the juvenile docket to the regular criminal docket should not be dismissed for lack of a final judgment. See *In re Michael S.*, 258 Conn. 621 [784 A.2d 317] (2001); *In re Juvenile Appeal (85–AB)*, 195 Conn. 303 [488 A.2d 778] (1985)."

[3] The order read: "After a hearing as to why the respondent's appeal from the order granting the state's motion to transfer the respondent's case from the juvenile docket to the regular criminal docket should not be dismissed for lack of a final judgment; see *In re Michael S.*, 258 Conn. 621 [784 A.2d 317] (2001); *In re Juvenile Appeal (85–AB)*, 195 Conn. 303 [488 A.2d 778] (1985); it is hereby ordered that the appeal is dismissed."

[4] In the alternative, the respondent argues that if the legislature's intent is unclear, this court's decision in *In re Juvenile Appeal (85–AB)*, 195 Conn. 303, 307, 488 A.2d 778 (1985), which concluded that pursuant to *State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983) a discretionary transfer order was not a final judgment for purposes of appeal, should be overruled given the development of our understanding of adolescent cognitive development. Because we conclude that the legislature has manifested a clear intent to prohibit interlocutory appeals of discretionary transfer orders, we need not address whether such orders are final judgments pursuant to *Curcio*.

[5] General Statutes (Supp. 2014) § 46b-127 (a) provides: "(1) The court shall automatically transfer from the docket for juvenile matters to the regular criminal docket of the Superior Court the case of any child charged with the commission of a capital felony under the provisions of section 53a-54b in effect prior to April 25, 2012, a class A or B felony or a violation of section 53a-54d, provided such offense was committed after such child attained the age of fourteen years and counsel has been appointed for such child if such child is indigent. Such counsel may appear with the child but shall not be permitted to make any argument or file any motion in opposition to the transfer. The child shall be arraigned in the regular criminal docket of the Superior Court at the next court date following such transfer, provided any proceedings held prior to the finalization of such transfer shall be private and shall be conducted in such parts of the courthouse or the building in which the court is located that are separate and apart from the other parts of the court which are then being used for proceedings pertaining to adults charged with crimes.

"(2) A state's attorney may, at any time after such arraignment, file a motion to transfer the case of any child charged with the commission of a class B felony or a violation of subdivision (2) of subsection (a) of section 53a-70 to the docket for juvenile matters for proceedings in accordance with the provisions of this chapter."

[6] General Statutes (Supp. 2014) § 46b-127 (f) provides: "Upon the motion of any party or upon the court's own motion, the case of any youth age sixteen or seventeen, except a case that has been transferred to the regular criminal docket of the Superior Court pursuant to subsection (a) or (b) of this section, which is pending on the youthful offender docket, regular criminal docket of the Superior Court or any docket for the presentment of defendants in motor vehicle matters, where the youth is charged with committing any offense or violation for which a term of imprisonment may

be imposed, other than a violation of section 14-227a or 14-227g, may, before trial or before the entry of a guilty plea, be transferred to the docket for juvenile matters if (1) the youth is alleged to have committed such offense or violation on or after January 1, 2010, while sixteen years of age, or is alleged to have committed such offense or violation on or after July 1, 2012, while seventeen years of age, and (2) after a hearing considering the facts and circumstances of the case and the prior history of the youth, the court determines that the programs and services available pursuant to a proceeding in the superior court for juvenile matters would more appropriately address the needs of the youth and that the youth and the community would be better served by treating the youth as a delinquent. Upon ordering such transfer, the court shall vacate any pleas entered in the matter and advise the youth of the youth's rights, and the youth shall (A) enter pleas on the docket for juvenile matters in the jurisdiction where the youth resides, and (B) be subject to prosecution as a delinquent child. The decision of the court concerning the transfer of a youth's case from the youthful offender docket, regular criminal docket of the Superior Court or any docket for the presentment of defendants in motor vehicle matters shall not be a final judgment for purposes of appeal."

[7] Public Acts 1979, No. 79-581, § 3.

[8] General Statutes (Rev. to 1981) § 46b-127 provides: "The court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder, provided any such murder was committed after such child attained the age of fourteen years; (2) any child referred for the violation of any provision of title 53a which is designated as a class A felony, if such violation was committed after such child attained the age of fourteen, provided such child has previously been adjudicated a delinquent for a violation of any provision of title 53a, which at the time of such violation was designated a class A felony; or (3) any child referred for the violation of any provision of title 53a which is designated as a class B felony, provided such violation was committed after such child attained the age of fourteen years, and further provided such child has previously been adjudicated delinquent for two violations of any provision of title 53a, which at the time of such violations were designated a class A or B felony. No such transfer shall be valid unless, prior thereto, the court has caused an investigation to be made as provided in section 46b-134 and has found, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged. Upon the effectuation of the transfer, such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age. If the action is dismissed or nolled or if such child is found innocent of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen."

[9] Public Acts 1979, No. 79-581, § 2.

[10] General Statutes (Rev. to 1981) § 46b-126 (a) provides: "The court shall hold a transfer hearing to determine whether it is appropriate to transfer and may transfer from the docket for juvenile matters to the regular criminal docket of the superior court any child referred for the commission of a class A felony, or for any serious juvenile offense if such child has previously been adjudicated a delinquent for a serious juvenile offense, provided such child has attained the age of fourteen at the time the alleged delinquent act was committed. If the child is or has been under the custody of the commissioner of children and youth services, the commissioner shall provide any relevant information concerning the amenability of the child to treatment for use at the transfer hearing. No such transfer shall be valid unless, prior thereto, the court has caused an investigation to be made as provided in section 46b-134 and has made written findings after a hearing, that there is probable cause to believe that (1) the child has committed the act for which he is charged; (2) the child is not amenable to treatment in any institution or state agency or other available facility designed for the care and treatment of children to which said court may effect placement of such child which is suitable for his care or treatment and (3) the sophistication, maturity and previous adjudications of the juvenile are such that the facilities used for regular criminal sessions of the superior court provide a more effective setting for the disposition of the case and the institutions to which said court may sentence a defendant sixteen years of age or over are more suitable for the care and treatment of such child. Upon the effectuation of the transfer, such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age. If the action is dismissed or nolled or if such child is found innocent of the charge for which he was transferred,

the child shall resume his status as a juvenile until he attains the age of sixteen."

[11] See Public Acts 1979, No. 79-581, §§ 2 and 3; Public Acts 1983, No. 83-402, § 1; Public Acts 1984, No. 84-252.

[12] Public Acts 1986, No. 86-185, §§ 1 and 2.

[13] The legislature amended only the discretionary transfer statute, § 46b-126, in 1989, making the transfer hearing discretionary rather than mandatory. Public Acts 1989, No. 89-273, § 2. Identical changes were made to §§ 46b-126 and 46b-127 when they were amended in 1990. Public Acts 1990, No. 90-136, §§ 1 and 2; Public Acts 1990, No. 90-187, §§ 1 through 3.

[14] Public Acts, Spec. Sess., July, 1994, No. 94-2, § 6 (1994 amendment).

[15] Moreover, although the current version of the mandatory transfer provision in § 46b-127 does not create any mechanism or opportunity for challenging a transfer pursuant to that provision, when this court decided *In re Daniel H.* in 1996, a mandatory transfer was valid only after a probable cause hearing had been held, with the trial court making a written finding of probable cause, and the respondent could request a hearing following the probable cause determination challenging the transfer for a number of reasons. See General Statutes (Rev. to 1995) § 46b-127; see also *In re Daniel H.*, supra, 237 Conn. 366 n.1. Thus, a respondent could challenge rulings and orders made by the trial court under that version of the mandatory transfer provision.

[16] The language that remained in § 46b-126 was as follows: "There shall be established or designated by the Department of Children and Families a secure facility or facilities within the state devoted to the care and treatment of children, which children are under the jurisdiction of the Superior Court. A consideration for admission to such a facility shall be adjudication for a serious juvenile offense." General Statutes (Rev. to 1997) § 46b-126.

[17] Public Acts 1995, No. 95-225, §§ 13 and 39.

[18] From 1997 until 2009, § 46b-127 was amended seven times, once each in 1998, 2007, and 2009, and twice in 1997 and in 2004. Public Acts 1997, No. 97-4, § 1, and Public Acts 1997, No. 97-319, § 21; Public Acts 1998, No. 98-256, § 3; Public Acts 2004, No. 04-127, § 2, and Public Acts 2004, No. 04-148, § 1; Public Acts, Spec. Sess., June, 2007, No. 07-4, § 75; Public Acts, Spec. Sess., September, 2009, No. 09-7, §§ 71, 84 and 122.

[19] Public Acts, Spec. Sess., June, 2010, No. 10-1, § 30.

[20] Public Acts 2011, No. 11-157, § 18; Public Acts 2012, No. 12-5, § 10; Public Acts, Spec. Sess., June, 2012, No. 12-1, § 280.

[21] See footnotes 18, 19 and 20 of this opinion.

[22] Public Acts, Spec. Sess., June, 2010, No. 10-1, § 30.